1

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT FOR THE

7                      EASTERN DISTRICT OF CALIFORNIA

8

9  TRUDY G. HEMPHILL,              )         No. CV-F-05-1319 OWW/SMS
                                   )
10                                 )         ORDER DENYING DEFENDANTS'
                                   )         MOTION TO DISMISS (Doc. 43)
11                  Plaintiff,     )
                                   )
12           vs.                   )
                                   )
13                                 )
   PERSONAL REPRESENTATIVE OF      )
14 THE ESTATE OF JAMES J.          )
   RYSKAMP, JR., et al.,           )
15                                 )
                                   )
16                  Defendant.     )
                                   )
17 _____)

18      On October 18, 2005, plaintiff Trudy G. Hemphill filed a

19 Complaint in this court naming as defendants the Personal

20 Representative of the Estate of James J. Ryskamp, Jr. (Ryskamp

21 Estate); James J. Ryskamp, Jr., M.D., Inc. (Ryskamp Inc.);

22 Ryskamp-Takayama 401(k) Profit Sharing Plan (Ryskamp-Takayama

23 Plan); James J. Ryskamp, Jr., M.D., Inc. Money Purchase Pension

24 Plan (Ryskamp MP Plan); James J. Ryskamp, Jr., M.D., Inc. Profit

25 Sharing Plan (Ryskamp PS Plan); Norio Takayama; Norio Takayama,

26 M.D., Inc.  Plaintiff is now proceeding under a Second Amended

                                   1

1   Complaint (SAC).  The SAC drops Norio Takayama and Norio

2   Takayama, M.D., Inc. as defendants and adds as a defendant Judith

3   Dickison Ryskamp, individually and as Trustee of the James J.

4   Ryskamp, Jr. and Judith Dickison Ryskamp Living Trust (Ryskamp

5   Trust).

6       Defendants move to dismiss the SAC pursuant to Rule

7   12(b)(6), Federal Rules of Civil Procedure, for failure to state

8   claims upon which relief can be granted.  Defendants argue that

9   this action is barred by the applicable statutes of limitation.

10  See discussion infra.

11      **A.   Pertinent Allegations of SAC and Prayers for Relief**.

12      The SAC alleges that this action is "for injunctive,

13  equitable, declaratory and monetary relief ... pursuant to

14  Section 502 of ERISA, 29 U.S.C. § 1132.  The SAC further alleges

15  that plaintiff married Ryskamp in 1981 and became employed by

16  Ryskamp Inc. in 1982.  Because of her employment, plaintiff

17  became a vested participant in the Ryskamp MP Plan, the Ryskamp

18  PS Plan and the Ryskamp-Pollock Plan, which resulted from the

19  merger in 1989 of the Ryskamp MP Plan and the Ryskamp PS Plan.

20  Plaintiff obtained a judgment of dissolution of her marriage to

21  Ryskamp on January 17, 1992.  The SAC further alleges in

22  pertinent part:

23          17.  Upon information and belief, Plaintiff
            alleges that in 1993, other participants in
24          the Ryskamp-Pollock Plan were afforded the
            opportunity to self-invest the funds held in
25          their employee benefit plan accounts.  Ms.
            Hemphill was never informed of such an
26          opportunity and was never afforded the

2

1    opportunity to self-invest her interests in
     the Defendant Plans or their predecessors.

2
     ...

3
     19.  A Stipulated Qualified Domestic
4    Relations Order ('QDRO') was entered on
     August 10, 1994 in the marital dissolution
5    proceeding involving Ms. Hemphill and
     Ryskamp.  The QDRO created and assigned to
6    Ms. Hemphill, as an alternate payee, the
     right to $50,000 of Ryskamp's interest in the
7    Ryskamp-Takayama Plan.  By the terms of the
     QDRO, Ms. Hemphill could receive this
8    interest in the Ryskamp-Takayama Plan
     pursuant to her written instructions at any
9    time following the date the QDRO was approved
     by the Plan Administrator of the Ryskamp-
10   Takayama Plan.

11   20.  The QDRO further granted Ms. Hemphill
     all of the rights and election privileges
12   afforded to active participants in the
     Ryskamp-Takayama Plan.

13
     21.  The QDRO also specified that the
14   Ryskamp-Takayama Plan was obligated to
     provide Ms. Hemphill with 'all notices and
15   information with respect to the retirement
     benefits as herein divided, including, for
16   example, annual reports, annual accounts, any
     new or revised retirement booklets or
17   bulletins.'

18   22.  The court in the marital dissolution
     proceeding entered other orders on August 11,
19   1994 regarding the division of community
     property and non-community property between
20   Ms. Hemphill and Ryskamp ('August 11, 1994
     Orders').  These orders stated that Ms.
21   Hemphill was entitled to not only $50,000 of
     Ryskamp's benefits under the Ryskamp-Takayama
22   Plan created by the QDRO but also to her
     vested interest in three other employee
23   benefit plans or their successors.  Ms.
     Hemphill was entitled to (1) an amount not
24   less than $5,668 in the Ryskamp MP Plan, or
     any successor; (2) an amount not less that
25   $2,661 in the Ryskamp PS Plan, or any
     successor; and (3) an amount not less that
26   $4,600 in the Ryskamp-Pollock Plan, or any

                          3

successor.  The August 11, 1994 Orders further stated that Ms. Hemphill and Ryskamp would cooperate in the process of accomplishing the distributions set forth in the August 11, 1994 Orders in a timely fashion.

23.  On September 8, 1994, Ryskamp, as Plan Administrator and Trustee of the Ryskamp-Takayama Plan, certified the QDRO as a qualified domestic relations order and approved the distribution of benefits to Ms. Hemphill in accordance with the QDRO.

24.  On or about September 15, 1994, Ms. Hemphill received papers from the Defendant Plans' third party administrator (the 'TPA') regarding her right to elect distribution of the smallest of the four benefits - the $2,661 - specified in the August 11, 1994 Orders.  She did not receive any papers regarding distribution of the three larger amounts - the $50,000, the $5,668 and the $4,600.  When Ms. Hemphill asked the TPA about distribution of the three larger amounts, the TPA informed her that she would not receive distribution paperwork for the three larger amounts until the forms for the smallest amount were completed and returned.

25.  In mid-1996, Ms. Hemphill's accountant requested, on Ms. Hemphill's behalf, distribution and accounting of all four amounts specified in the August 11, 1994 Orders.  Ryskamp never did provide distribution election forms to Ms. Hemphill following her accountant's request in 1996.

26.  Ms. Hemphill contacted the TPA directly in 2002 to request distribution of her benefits in the Defendant Plans.  The TPA referred Ms. Hemphill to make her inquiries to the Ryskamp, Inc. 'plan administrative committee' but did not inform her how to contact the plan administrative committee. The TPA further informed Ms. Hemphill that she could not receive a distribution from the Defendant Plans because Ryskamp had not yet filed tax forms for year 2001 and that she would have to wait until his tax forms were filed before she could receive any benefits.

27.  Having received none of the information she requested, Ms. Hemphill sent Ryskamp a letter on August 4, 2003 requesting distribution of her benefits under the Defendant Plans, the forms necessary for the distribution, and account statements for her interest in the Defendant Plans.  Ms. Hemphill sent the August 4, 2003 letter via certified mail to both Ryskamp's home and office.  Both letters were received. However, Ryskamp failed to respond.

28.  On November 24, 2004, the TPA sent Ms. Hemphill distribution election forms for a $50,000 benefit from the Ryskamp Plan - i.e., the amount originally awarded to Ms. Hemphill in the QDRO, with no earnings in the subsequent ten years.

29.  On or around December 3, 2004, Ms. Hemphill contacted the TPA by telephone and by letter to request, again, copies of account statements of her interests, summary annual reports, summary plan descriptions, and Form 5500 Annual Return/Reports for the Defendant Plans from 1990 to present.

30.  The TPA replied on December 20, 2004, stating that Ms. Hemphill should not contact it regarding her interest in the Defendant Plans but should contact the Ryskamp, Inc. plan administrative committee.  Again, Ms. Hemphill was not told how and where the Ryskamp, Inc. plan administrative committee could be contacted.  The TPA asked Ms. Hemphill not to contact it in the future but to contact its attorney.

31.  On December 31, 2004, Ms. Hemphill sent a letter to the TPA's attorney requesting copies of account statements of her interests, summary annual reports, summary plan descriptions, documents showing where her interests were being held by the Defendant Plans, documents regarding changes made to the Defendant Plans and Form 5500 Annual Return/Reports for the Defendant Plan [sic] and their predecessors from 1990 to present for the express purpose of accepting a rollover distribution of her benefits in the Defendant Plans.  She received no

5

1    response.

2        32.  On February 3, 2005, Ms. Hemphill wrote
     to Ryskamp, through his attorney, to request
3    Summary Plan Descriptions, Summaries of
     Material Modifications, Form 5500s, her
4    individual benefit statements, and banking
     and brokerage statements that reveal where
5    her plan benefits were being held and have
     been held from 1990 to the date of the
6    letter.  Ryskamp failed to respond.

7        33.  On March 29, 2005, Ms. Hemphill, through
     her attorney, made yet another written
8    request for Ryskamp and the TPA for
     information and documents.  The March 29,
9    2005 letter reiterated Ms. Hemphill's
     requests for an accounting of her interest in
10   the Defendant Plans and their predecessors
     from August 1994 to the date of the letter,
11   copies of the Summary Plan Descriptions,
     Summaries of Material Modifications, Summary
12   Annual Reports, Forms 5500, and account
     benefit statements from Ms. Hemphill's
13   interests in the Defendant Plans and their
     predecessors from 1994 to the date of the
14   letter.

15       34.  On April 29, 2005, Ryskamp, through his
     attorney, provided a limited set of old
16   documents that were responsive to only a
     small portion of Ms. Hemphil's March 29, 2005
17   request.  Ryskamp provided no documents for
     any year later than 1999 for the Defendant
18   Plans or their predecessors, no documents for
     the Ryskamp MP Plan and the Ryskamp PS Plan
19   in any year, and no accounting.  Of the
     documents provided, there was only one
20   Summary Plan Description for only one of the
     plans, two Plan Annual Reports for just one
21   year for two plans, Forms 5500s for a handful
     of years for only the Ryskamp-Takayama Plan
22   and one year of the Ryskamp-Pollock Plan,
     account statements regarding Ms. Hemphil's
23   benefits for the Ryskamp-Takayama Plan for
     1994 through 1999.  Ms. Hemphill's request
24   for information currently remains
     unfulfilled.
25
         35.  Ms. Hemphill's many inquiries to the
26   fiduciaries of the Defendant Plans and their

6

predecessors regarding her entitlement to benefits and many requests for an accounting and a distribution of her benefits resulted in either no response or only referrals to other individuals or entities who were equally unwilling to respond to Ms. Hemphill. Ms. Hemphill has not received any written denial or approval of her requests for an accounting or distribution of benefits.  She also has not received any explanation or clarification of her rights regarding her entitlement to benefits under the Defendant Plans or their predecessors.  The Defendants have refused to provide, and have never provided, Ms. Hemphill with complete documentation regarding her benefits and have refused to distribute, and have never distributed, the benefits to which she is entitled.  The Defendants have never provided Ms. Hemphill with an adequate accounting of her benefits.  In light of the repeated failure of the Defendants to provide any meaningful response to Ms. Hemphill's many inquiries, Ms. Hemphill has exhausted her administrative remedies under the Defendant Plans and their predecessors, or is otherwise excused from doing so because such remedies would be futile.

36.  Plaintiff alleges, upon information and belief based on documents recently obtained from Defendant Plans' former TPA, that before and following Ryskamp's death in September 2005, assets of the Defendant Plans, including benefits to which Ms. Hemphill was entitled, were distributed to Mrs. Ryskamp, the Ryskamp Estate, and/or the Ryskamp Trust, as Ryskamp's beneficiary or beneficiaries under the Defendant Plans.

37.  Upon information and belief based on documents recently obtained from Defendant Plans' former TPA, Ryskamp and/or Ryskamp Inc. diverted assets of the Defendant Plans, some of which rightfully belonged to Ms. Hemphill, to Ryskamp Inc. for business purposes and/or to Ryskamp as an individual.

38.  Upon information and belief based on documents recently obtained from Defendant Plans' former TPA, Plaintiff alleges that,

7

while Ryskamp and/or Ryskamp Inc. were
serving as fiduciaries to the Defendant Plans
and their predecessors, Ryskamp and/or
Ryskamp Inc. invested assets of those plans
in risky, speculative investments that are
not permitted under federal securities laws
for plans of their kind and size.  As a
result of these speculative investments,
Ryskamp and/or Ryskamp Inc. exposed the plans
to excessive risk, and these speculative
investments resulted in large losses to the
plans.

39.  Upon information and belief based on
documents recently obtained from Defendant
Plans' former TPA, Ryskamp and Ryskamp Inc.
failed to properly manage and account for the
assets of the Defendant Plans, and their
failures resulted in thecurrent [sic]
situation, where hundreds of thousands of
dollars of plan assets may no longer be
accounted for.

The SAC alleges five claims for relief.  The First Claim for

Relief is for declaratory relief against all defendants pursuant

to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(3) and prays for the

following relief:

A.  Declare that Ms. Hemphill is entitled to
accrued vested benefits under the Defendant
Plans, including all interest and earnings
that accrued or should have accrued on the
principal amounts, that Ms. Hemphill is
entitled to self-direct the investment of her
plan account under the Defendant Plans and
should have been entitled to do so when other
participants were afforded that opportunity,
and that Ms. Hemphill is entitled to request
and receive documents as provided under ERISA
§§ 104(b) and 105(a).

B.  Declare that any benefits arising from
Ryskamp's participation in the Defendant
Plans that were received by the Ryskamp
Estate, Ryskamp Trust, and/or Mrs. Ryskamp
include those benefits to which Ms. Hemphill
was entitled under the Defendant Plans and
are held in constructive trust for her, and

8

that Ms. Hemphill is therefore entitled to
such benefits that were so distributed.

The Second Claim for Relief is a claim for benefits, to enforce her rights, and clarify her rights against the Ryskamp Plan and the Ryskamp-Takayama Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).  The Second Claim for Relief prays in pertinent part for:

A.  Order an accounting of Ms. Hemphill's benefits under the Defendant Plans;

B.  Clarify Ms. Hemphill's rights under the Defendant Plans, including but not limited to, the right to self-direct the investment of her plan account, to request and receive plan documents, and to receive a distribution of benefits, including interest and earnings.

C.  Order distribution, to Ms. Hemphill, of her benefits, including all interest and earnings that accrued or should have accrued on the principal amounts, under the Defendant Plans ...

The Third Claim for Relief against the Ryskamp Estate, Ryskamp Trust and Ryskamp Inc. is for breach of fiduciary duty pursuant to 29 U.S.C. §§ 1132(a) and 1132(a)(3), alleging that Ryskamp and Ryskamp Inc. "engaged in a prohibited transaction in violation of ... 29 U.S.C. § 1106(a)-(b), by diverting the assets of the Defendant Plans and their predecessors to Ryskamp Inc. for business purposes and/or to Ryskamp as an individual"; that Ryskamp and Ryskamp Inc. wrongfully profited from the prohibited transaction by using plan assets for their own benefit"; and that Ryskamp and Ryskamp Inc. breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by engaging in the prohibited transaction, by

9

failing and refusing to provide to plan information and documents
to plaintiff concerning her rights and benefits; failing and
refusing to provide plaintiff with an accounting of her benefits
under the Defendant Plans; failing to provide plaintiff with all
of the rights and privileges afforded to participants and
beneficiaries under the Defendant Plans; and engaging in
speculative, risky investment of plan assets.  The Third Claim
for Relief prays for a declaration that Ryskamp and Ryskamp Inc.
breached their fiduciary duties to plaintiff; an injunction
enjoining Ryskamp Inc. from further violation of its fiduciary
duties; a constructive trust on any "ill-gotten profits"
resulting from the alleged breaches of fiduciary duty;
disgorgement from the Ryskamp Estate, Ryskamp Trust, and Ryskamp
Inc. of any "ill-gotten profits" from the alleged breaches of
fiduciary duty; restoration from the Ryskamp Estate, Ryskamp
Trust, and Ryskamp Inc. of any losses resulting from the alleged
breaches of fiduciary duty; allocation of restored losses and
profits to the individual accounts of participants under the
Defendant Plans; an injunction precluding the Ryskamp Estate,
Ryskamp Trust, and Ryskamp Inc. and any other successor
fiduciaries from refusing to extend to plaintiff the same rights
and privileges of other participants and beneficiaries under the
Defendant Plans; an injunction preventing Ryskamp Inc and any
other successor plan administrators from denying requests under
29 U.S.C. §§ 1024(a) and 1025(a) by participants in the Defendant
Plans; remove Ryskamp and/or Ryskamp Estate, Ryskamp Trust and

10

Ryskamp Inc as fiduciaries of the Defendant Plans and bar them from ever serving as fiduciaries of the Defendant Plans in the future; and appoint an independent fiduciary "for both of the Defendant Plans".

The Fourth Claim for Relief is against Ryskamp Inc. for injunctive relief and nondisclosure penalties pursuant to 29 U.S.C. § 1132(c)(1) and prays for the following relief:

> A.   Order production of the following: (1) governing plan instruments, including the plan document and trust agreement, of the Defendant Plans and their predecessors in effect at any time from September 18, 1981 to present, and all amendments thereto; (2) Summary Plan Descriptions of the Defendant Plans and their predecessors issued at any time from September 18, 1981 to present, and all Summaries of Material Modifications thereto; (3) all notices pursuant to ... 29 U.S.C. § 1054(h), with regard to any of the Defendant Plans and their predecessors from September 18, 1981 to present; (4) all notices of termination of any of the Defendant Plans or their predecessors from September 18, 1981 to present; (5) the most recent Forms 5500 for both of the Defendant Plans and each of their predecessors, with all schedules and attachments thereto; (6) the most recent Summary Annual Reports for each of the Defendant Plans and their predecessors; and (7) annual account benefit statements for Ms. Hemphill's interests in the Defendant Plans and/or its predecessors from 1994 to present;
>
> B.   Award Plaintiff penalties of $110 per day, per document, pursuant to ... 29 U.S.C. § 1132(c) and 29 C.F.R. § 2570.502(e)-1, from the date the Court determines that Ms. Hemphill first made a request for the document to the date that the plan administrator for the Defendant Plans provides Ms. Hemphill with all documents required by ... 29 U.S.C. § 1024(b)(4) and 1025(a).

11

1    The Fifth Claim for Relief is against Ryskamp Inc., Ryskamp
2    Estate, Ryskamp Trust, and Mrs. Ryskamp for equitable and
3    injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and prays
4    for a declaration that these defendants are wrongfully holding
5    benefits to which plaintiff is entitled and of which plaintiff
6    was wrongfully deprived; enjoin these defendants from dissipating
7    these benefits; and imposing a constructive trust on these
8    benefits and any "ill-gotten profits" on these benefits.

9    **B.   <u>Governing Standards</u>.**

10    Rule 12(b)(6), Federal Rules of Civil Procedure, provides
11    that a motion to dismiss may be made in the plaintiff "fails to
12    state a claim upon which relief can be granted."  However,
13    motions to dismiss under Rule 12(b)(6) are disfavored and rarely
14    granted.  The question before the court is not whether the
15    plaintiff will ultimately prevail; rather, it is whether the
16    plaintiff could prove any set of facts in support of his claim
17    that would him to relief.  *See Hishon v. King & Spaulding*, 467
18    U.S. 69, 73 (1984).  "A complaint should not be dismissed unless
19    it appears beyond doubt that plaintiff can prove no set of facts
20    in support of his claim that would entitle him to relief."  *Van
21    Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir.2002)(citations
22    omitted).

23    In decided whether to grant a motion to dismiss under Rule
24    12(b)(6), the court "accept[s] all factual allegations of the
25    complaint as true and draw[s] all reasonable inferences" in the
26    light most favorable to the nonmoving party.  *TwoRivers v. Lewis*,

174 F.3d 987, 991 (9th Cir.1991); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir.2002).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).  Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

C.  **Merits of Motion**.

Defendants contend that all five claims alleged in the SAC are barred by "at least" two statutes of limitation.

1.  **California Code of Civil Procedure § 337.5(3)**.

First, defendants contend, the applicable statute of limitations is set forth in California Code of Civil Procedure § 337.5(3).  Section 337.5(3) provides a ten year statute of limitation for "[a]n action upon a judgment or decree of any court ... of any state within the United States."  Defendants also refer to California Family Code § 291:

> A judgment or order for possession or sale of property made or entered pursuant to this code is subject to the period of enforceability and the procedure for renewal provided by Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9 of Part 2 of the Code of Civil Procedure.

California Code of Civil Procedure § 683.010 provides: "Except as otherwise provided by statute or in the judgment, a judgment is

13

enforceable under this title upon entry." California Code of

Civil Procedure § 683.020 provides:

> Except as otherwise provided by statute, upon the expiration of 10 years after the date of entry of a money judgment or a judgment for possession or sale of property:
>
> (a) The judgment may not be enforced.
>
> (b) All enforcement procedures pursuant to the judgment or to a writ or order issued pursuant to the judgment shall cease.
>
> (c) Any lien created by an enforcement procedure pursuant to the judgment is extinguished.

Defendants also refer to the definition of a qualified domestic

relations order (QDRO) in 29 U.S.C. § 1056(d)(3)(B):

> (i) the term 'qualified domestic relations order' means a domestic relations order –
>
> (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payment with respect to a participant under a plan, and
>
> (II) with respect to which the requirements of subparagraphs (C) and (D) are met, and
>
> (ii) the term 'domestic relations order' means any judgment, decree, or order (including approval of a property settlement agreement) which –
>
> (I) relates to the provision of child support, alimony payments, or marital property rights of a spouse, former spouse, child, or other dependent of a participant, and
>
> (II) is made pursuant to a

14

State domestic relations law (including a
community property law).

Defendants argue that the SAC alleges claims based on the orders
of the assignment and distribution of community property between
plaintiff and Ryskamp.  In so arguing, defendants refer to
paragraphs 19, 21, 22, 24 and 25.

Plaintiff opposes this aspect of the motion, contending that
neither Code of Civil Procedure § 337.5 or Family Code § 291
apply to the SAC because she seeks to enforce her rights under
ERISA as a participant and beneficiary in the Defendant Plans,
not under the QDRO or the August 11, 1994 Orders.  Therefore, she
contends, this action is not "an action upon a judgment or decree
... of any state within the United States" nor is it an action
for "enforcement" of a "money judgment or a judgment for
possession or sale of property" subject to Family Code § 291 or
Code of Civil Procedure § 683.1.

Plaintiff argues that the August 11, 1994 Orders did not
create her enforceable rights to benefits under the Defendant
Plans or their predecessors, noting that the SAC pleads that she
had vested interests in three of the plans.  Therefore, she
contends, those vested interests arose by virtue of her
employment with Ryskamp Inc, in accordance with the plan terms
and are inalienable under ERISA.  Plaintiff asserts:

The Dissolution Orders merely re-affirmed
that Ms. Hemphill had certain vested benefits
under the terms of the Defendant Plans and
their predecessors, and they could not
possibly serve to *deprive* Ms. Hemphill of
those benefits.  Thus, Ms. Hemphill's claim

15

1        for benefits in this action is not an action
to enforce the Dissolution Orders or an
2        action brought pursuant to the Dissolution
Orders.  Instead, it is a claim brought under
3        ERISA ... for enforcement and clarification
of rights to benefits 'under the terms of the
4        [Defendant][P]lans' and their predecessors
... The Dissolution Orders confirm the
5        existence of Ms. Hemphill's vested rights to
benefits, but they are otherwise superfluous
6        to Ms. Hemphill's claim for benefits.

7 With regard to the QDRO, plaintiff argues that it does not

8 provide a basis for her current claim for benefits under ERISA.

9 Plaintiff contends that the domestic relations order does not

10 provide an enforceable basis for payment of benefits until it is

11 approved as a qualified domestic relations order by the plan

12 administrator.  In so asserting, plaintiff cites *Trustees of*

13 *Directors Guild of America v. Tise*, 234 F.3d 415, 421 (9th Cir.

14 2000), *amended*, 255 F.3d 661 (9th Cir. 2001):

15        Under this scheme ..., whether an alternate
payee has an interest in a participant's
16        pension plan is a matter decided by a state
court according to the state's domestic
17        relations law.  Whether a state court's order
meets the statutory requirements to be a
18        QDRO, and therefore is enforceable against
the pension plan, is a matter determined in
19        the first instance by the pension plan
administrator, and, if necessary, by a court
20        of competent jurisdiction.  *See* 29 U.S.C. §
1056(d)(3)(H)(i).
21
        It therefore follows ... that '[t]he QDRO
22        provisions of ERISA do not suggest that [the
alternate payee] has no interest in the
23        plan[] until she obtains a QDRO, they merely
prevent her from enforcing that interest
24        until the QDRO is obtained.' ....

25 *Tise* further states that "under ERISA, the pension plan must pay

26 the bearer of a DRO if it determines that the order is a proper

16

1  QDRO, without further inquiry; '[c]ompliance with a QDRO is

2  obligatory.'" 234 F.3d at 424.   29 U.S.C. § 1056(d)(3)(J)

3  provides that "[a] person who is an alternate payee under a

4  qualified domestic relations order shall be considered for

5  purposes of any provision of this chapter a beneficiary under the

6  plan."   Relying on this law, plaintiff argues that, because ERISA

7  gives beneficiaries and participants the right to bring a civil

8  action to recover benefits due and to enforce rights under the

9  terms of the plan, an action by an alternate payee designated by

10 a QDRO is an action brought under the terms of a plan, and not an

11 action to enforce any underlying state court domestic relations

12 order or judgment:

> ... The certification of the Proposed QDRO
> obligated the Plan and its fiduciaries *under
> ERISA* to distribute benefits to Ms. Hemphill,
> who became a 'beneficiary' under the
> Defendant Plans.  Thus, Ms. Hemphill's claim
> for benefits arises under ERISA and the terms
> of the Defendant Plans and rests on the
> obligations of the Plan and its fiduciaries
> *under federal law* to make good on its
> certification and approval of the Proposed
> QDRO as the Ryskamp QDRO.

19 Plaintiff, noting that defendants cite no case law in support of

20 their position, refers to *Jordan v. Jordan*, 147 S.W.3rd 255

21 (Tenn.Ct.App. 2004).   In *Jordan*, the defendant argued that his

22 ex-wife's efforts to obtain a proposed QDRO more than ten years

23 after the entry of judgment in their divorce was barred by

24 Tennessee's 10 year statute of limitations for actions to enforce

25 judgments.   The court rejected the argument:

> The plan administrator in the instant case

17

has yet to approve the proposed QDRO.  Hence,
the trial court's decree cannot be enforced
against the 'holder of the purse strings.'
Any attempt to 'enforce' the trial court's
validly-entered division of Husband's pension
plan would be futile.  We conclude from all
of this that the approval of the proposed
QDRO is adjunct to the entry of the judgment
of divorce and not an attempt to 'enforce'
the judgment.  It is an essential act to
bring to fruition the trial court's decree
regarding a division of Husband's interest in
the DuPont pension plan.  Until the proposed
QDRO is approved by the plan administrator
and entered by the trial court, the act of
the trial court in dividing the pension plan
*is not complete and hence not enforceable*.
It can be accurately described as inchoate in
nature.  It follows that Wife's attempt to
obtain the approval of the plan administrator
of the proposed QDRO and the entry of that
order is not an action to enforce the divorce
judgment, and hence is not barred by the ten-
year statute of limitations.

147 S.W.3rd at 262-263.  Plaintiff, refers to the September 8,

1994 plan administrator's approval of the QDRO, and argues that

she is now and has been for years a full-fledged participant and

beneficiary in the Defendant Plans.  She contends that "[n]o

state law regarding the expiration of domestic relations orders

can deprive her of that status."  She further contends that, if

the plaintiff's claims in *Jordan* were not time-barred, her claims

are not time-barred because she had "long since taken every

necessary action to perfect her interests in the benefits under

the Defendant Plans."

Plaintiff's reliance on *Jordan* as supportive of her is

misplaced.  *Jordan* does not support an inference that the state

statute of limitations to enforce a judgment does not apply if

18

the QDRO had been obtained.   *Jordan* is distinguishable and does not support plaintiff's position.

   Defendants reply that plaintiff's opposition ignores the allegations of the SAC.  Defendants point to paragraphs 19 and 22 of the SAC, claims by plaintiff that she was entitled to the assignment, transfer and vesting of four different benefits by virtue of the QDRO and the August 11, 1994 Orders and that, because of these orders, the interests were properly distributed to her.  Defendants contend:

>           In the [SAC] Plaintiff makes allegations to
>           attribute her claim to the interests in the
>           retirement funds to two orders from
>           California court that adjudicated the rights
>           of Plaintiff and Ryskamp to the funds.  The
>           QDRO, according to the SAC, kept the three
>           smaller amounts vested in Plaintiff, when in
>           a marital dissolution those could have been
>           vested in Ryskamp.  Marital dissolution
>           matters in California address the balancing
>           of the division of community property in a
>           dissolution and the clear implication of the
>           SAC is that these orders were intended to do
>           that.

Defendants further argue in support of the motion to dismiss:

>           ... The basis of Plaintiff's claims are that
>           the benefits were not distributed to her.
>           The allegations of paragraph 19 state an
>           interest was created for her, assigned to her
>           and would be given only if she requested
>           them.  The allegations of paragraph 22 state
>           the distributions would be made in a timely
>           manner.  Her second amended complaint is that
>           she did not get them.  Ever, according to her
>           allegations.

>           The definition of a QDRO in ERISA ... is that
>           it is a domestic relations order which
>           creates or recognizes marital property rights
>           of a former spouse, and is made pursuant to a
>           State domestic relations law.  That meaning

is one that Plaintiff studiously tries to avoid in her opposition, though it certainly did not keep her from making the allegations of the SAC that the domestic orders were to create her rights and result in distributions.

For the purpose of this motion, all the allegations are to be treated as true.  That means ... according to the allegations, the retirement funds were to become and be Plaintiff's by reason of the orders of the dissolution of marriage court of California and be distributed to her.  According to the allegations ..., starting in 1994 Plaintiff tried and tried to have those funds disbursed to her and treated in other ways as hers.  She filed this suit ... more than 10 years since the making of the orders and more than 10 years from the September 1994 date Plaintiff's allegations that the funds were not disbursed to her and not treated as hers.

The allegations of Plaintiff's Second Amended Complaint are that as to a portion of the claimed funds, those funds were vested in her as part of the domestic relations order.  As to the $50,000 portion, she alleges that was to be transferred to her.  The orders could have vested all of them to Ryskamp and she alleges they did not.  The alleged orders are the basis of Plaintiff's claim of the funds.  It not, there would be no explanation for her to be claiming the funds.  If the funds were not transferred to her, she had no claims concerning all the matters she states.  The allegations ... are that the funds were to be transferred to Plaintiff pursuant to the orders and she is suing because they have not been transferred to her from as early as her first alleged request in September 1994.

Defendants further contend that, contrary to plaintiff's arguments that she is seeking to enforce her rights under ERISA as a participant and beneficiary, reading the allegations in paragraphs 24-29 and 35 of the SAC, plaintiff was never treated as a vested participant and never was treated as a beneficiary.

20

Again, referring to the definition of a QDRO in Section 1056(d)(3)(B)(i)(I) "which creates or recognizes the existence of an alternate payee's rights to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan", defendants argue that nothing in the SAC indicates anything was created or received and complains that plaintiff "spends pages and pages alleging in the SAC that Defendants never recognized Plaintiff's rights and Plaintiff never received all or a portion of the funds under either what she describes as the QDRO and the August 11, 1994 Orders."

The SAC alleges violations of ERISA.  Although the SAC raises ambiguity whether claims for relief are stated under ERISA, defendants do not move for dismissal on the ground that plaintiff is not entitled to relief under ERISA if the claims are timely.  Defendants argue that plaintiff will have to prove the fact of the QDRO and the August 11, 1994 Orders before obtaining relief.  However, the fact that plaintiff will have to prove the existence and content of these orders in order to obtain relief under ERISA does not convert this action into one to enforce a judgment.  Secondly, there are limitations periods applicable to claims under ERISA which govern the timeliness of the claims for relief alleged in the SAC.

Plaintiff further argues that ERISA preempts any application of the California statutes relied upon by defendants, an argument totally ignored by defendants in their reply brief.  In so

21

arguing, plaintiff notes that 29 U.S.C. § 1056(d)(1) requires

that "[e]ach pension plan shall provide that benefits provided

under the plan may not be assigned or alienated."  Plaintiff

argues that defendants' arguments

> arguments regarding expiration of the
> Proposed QDRO and the Dissolution Orders lead
> to the preposterous, inequitable outcome that
> vested benefits that were acknowledged and
> approved by Dr. Ryskamp as Plan Administrator
> and to which Ms. Hemphill was entitled were
> alienated within ten years of the Ryskamp
> QDRO and the Dissolution Orders simply by
> operation of California state law.   ERISA's
> preemption and anti-alienation provisions
> prohibit such an absurd result.

29 U.S.C. § 1144(a) provides in pertinent part that "the

provisions of this subchapter and subchapter III of this chapter

shall supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan described in

section 1003(a) of this title and not exempt under section

1003(b) of this title."

The starting point for determining whether ERISA preempts a

state law is Section 1144(a).  The Supreme Court has emphasized

the broad effect of Section 1144(a).  *See California Division of

Labor Standards v. Dillingham*, 519 U.S. 316, 324 (1997)(quoting

prior cases using the phrases "clearly expansive", "broad scope",

"expansive sweep", "broadly worded", "deliberately expansive",

and "conspicuous for its breadth".).  The Supreme Court has

stated that "[a] law 'relates to' an employee benefit plan, in

the normal sense of the phrase, if it has a connection with or

reference to such a plan." *Ingersoll-Rand Co. v. McClendon*, 498

U.S. 133, 139 (1990).  "Where a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ... that 'reference' will result in preemption."  *Dillingham*, 519 U.S. at 325.  With regard to the phrase "connection with", the Supreme Court holds: "[T]o determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans."  *Dillingham, id.*  In analyzing these objectives "[t]he basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."  *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995).  The Supreme Court has also emphasized that "[t]he principal object of the [ERISA] statute is to protect plan participants and beneficiaries."  *Boggs v. Boggs*, 520 U.S. 833, 845 (1997).  However, the Supreme Court has established a presumption that Congress did not intend ERISA to preempt areas of "traditional state regulation" that are "quite remote from the areas with which ERISA is expressly concerned - 'reporting, disclosure, fiduciary responsibility, and the like.'"  *Dillingham*, 519 U.S. at 330.

Relying on these pronouncements, plaintiff argues that California Family Code § 291 and California Code of Civil Procedure §§ 683.020 and 337.5 are preempted by ERISA because, if

applied to ERISA plans, they would undermine the ERISA statute

and Congressional intent behind ERISA:

> Defendants argue that these California
> statutes render QDROs stale if the benefits
> described in the orders are not distributed
> within ten years.  Defendants further argue
> that benefits that are described in a court
> order, and that are benefits to which a
> participant in an employee benefit plan has a
> vested interest, cease to exist after ten
> years following the entry of the order, by
> operation of these California statutes.
> ERISA ... contains no such limitation on the
> duration of a QDRO, and neither the Ryskamp
> QDRO nor the Dissolution Orders contain any
> sort of time limit for Ms. Hemphill to take a
> distribution of benefits.  Moreover,
> Defendants' arguments overlook the goal and
> intent of ERISA - protection of the rights of
> participants and beneficiaries in employee
> benefit plans, including their right to
> vested benefits ....

Citing *Boggs v. Boggs, supra*, 520 U.S. at 851, that "[s]tatutory

anti-alienation provisions are potent mechanisms to prevent the

dissipation of funds" and "can 'be seen to bespeak a pension law

protective policy of special intensity: Retirement funds shall

remain inviolate until retirement'", plaintiff contends that her

vested rights that arose because of her participation in the

Defendant Plans are inalienable and continue until she receives a

distribution.  She asserts: "Where state law interferes with this

unassailable right under ERISA, ERISA preempts such state law."

There is an additional purpose of ERISA that would be thwarted by

the state laws: ERISA permits participants to hold tax deferred

investment interests in qualified plans for the time periods

defined by plan provisions.  Requiring enforcement and

24

distribution of a participant's ERISA plan interest according to state law would conflict with and defeat ERISA's statute of limitations and individual plan terms.

Plaintiff makes a similar argument with respect to her rights as an alternate payee under the QDRO. She notes that, under ERISA, a plan administrator is bound by the terms of a QDRO and is bound to distribute benefits in accordance with its terms. *Tise, supra*, 234 F.3d at 424. She further notes that "ERISA assigns to plan administrators the fiduciary duty to ensure that an alternate payee's rights are protected." *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1156 (9th Cir. 2000), *cert. denied*, 531 U.S. 1074 (2001). Congress intended ERISA's QDRO provisions to give protection to the spouse and dependent children in the event of a divorce. *See Tise, supra*, 234 F.3d at 425. Plaintiff argues:

> In light of the purpose of ERISA to protect the right to benefits of participants and beneficiaries, Defendants' efforts to impose a ten-year state limitations period on actions to enforce rights described in a QDRO and other divorce-related orders lead to results antithetical to ERISA: the deprivation of Ms. Hemphill of her share of the pension benefits which accrued during her marriage to Ryskamp and the dissipation into thin air of Ms. Hemphill's vested benefits that had accrued during her employment with Ryskamp Inc. ERISA pension plans provide for *retirement* benefits; neither the Dissolution Orders nor the Ryskamp QDRO created any obligation for Ms. Hemphill to claim her benefits immediately. ERISA does not permit the forfeiture of Ms. Hemphill's benefits simply because she did not take an immediate rollover distribution of those benefits. Any state law that leads to such an absurd result

25

would clearly be directly antithetical to,
and therefore preempted by, ERISA.

Defendants' failure to respond to the preemption argument implies that defendants do not have authority that supports a contrary position.  The SAC alleges claims for relief under ERISA.  Plaintiff is either entitled to relief under ERISA or she is not, an issue that is not raised in the motion to dismiss. Plaintiff's ERISA claims alleged in the SAC are subject to ERISA statutes of limitations applicable to those claims.

## 2.  **29 U.S.C. § 1113**.

Alternatively, defendants move to dismiss the action as barred by the statute of limitations set forth in 29 U.S.C. § 1113:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –

(1) six years after (A) the date of the last action which constituted a part of the breach or violation or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Defendants, noting that paragraphs 24 and 25 allege that

26

plaintiff requested her benefits in September 1994 and in mid-1996, argue:

> Though paragraphs 24 and 25 of the SAC do not expressly state she knew the benefits had not been given to her, paragraph 25 must be read as an acknowledgment that Plaintiff knew her 1994 request was refused since she asked for them again in 1996.  In paragraph 27 ... Plaintiff allegedly again requested her benefits in August 2003, which indicates she knew that she had been refused when she requested them in 1994 and 1996.

Therefore, defendants argue, this action should have been filed within three years of the denial in 1994.

Plaintiff responds that the limitation period set forth in Section 1113 does not apply to all of the claims alleged in the SAC but only to the Third Claim for Relief.

### a.   __First and Second Claims for Relief__.

With regard to the claim for recovery of benefits and related claim for declaratory relief, plaintiff points out that, because there is no specific federal statute of limitations governing claims for benefits under an ERISA plan, the Ninth Circuit holds that California's four-year statute of limitations for suits on written contract (CCP § 337) applies to an ERISA cause of action based on a claim for benefits under a written contractual policy.  *Wetzel v. Lou Ehlers Cadillac*, 222 F.3d 643, 646-648 (9th Cir. 2000).

Plaintiff further opposes the motion to dismiss the claim for recovery of benefits and the related claim for declaratory relief under the four-year statute of limitations on the ground

1   that this limitation period "has never even begun to run".  In so

2   arguing, plaintiff refers to *Martin v. Construction Laborer's*

3   *Pension Trust*, 947 F.2d 1381, 1384 (9th Cir. 1991), wherein the

4   Ninth Circuit held:

> Although the analogous state statute of
> limitations establishes the time period
> within which suit must be brought, federal
> law determines the time at which the cause of
> action accrues ... A suit to enforce rights
> under a pension plan accrues, and the statute
> of limitations begins to run, when there has
> been a clear and continuing repudiation of
> rights under the pension plan which is made
> known to the beneficiary.

Plaintiff argues the allegations of the SAC demonstrate that the

Defendant Plans have never provided a clear denial of her claim

for benefits, despite the plan fiduciaries' failures to respond

to plaintiff's requests for distribution and information

regarding her benefits in 1996, 2002 and 2003.  She further

points out that the SAC alleges that the Defendant Plans were

willing to distribute some amount of benefits to plaintiff in

November 2004 when the TPA sent plaintiff benefit distribution

election forms for the $50,000 amount owed to plaintiff as the

alternate payee under the QDRO.  Plaintiff did receive a clear

and continuing repudiation of her right to benefits under the

four plans.

Defendants respond that plaintiff's rights arising from the

plans were clearly and continuously rejected by them when the

plans did not distribute the funds to her in 1994, 1996, 2002 and

2003.  However, defendants continuously failed to respond to

1  requests and did not repudiate plaintiff's rights in the plans,

2  except as to the $50,000 interest which defendants acknowledged

3  and represented they would honor.

4      Even if, *arguendo*, the allegations of the SAC may be

5  construed to infer a clear and continuing repudiation of

6  plaintiff's rights under the plans, plaintiff argues that the

7  running of the four-year statute of limitations was equitably

8  tolled by defendants' failure to provide information to plaintiff

9  regarding her rights under the Defendant Plans, the amount and

10 location of her benefits, the identity of and contact information

11 for the plan administrative committee, and the plans themselves.

12 In so arguing, plaintiff refers to *Santa Maria v. Pacific Bell*,

13 202 F.3d 1170, 1178 (9th Cir. 2000):

14          Equitable tolling may be applied if, despite
            all due diligence, a plaintiff is unable to
15          obtain vital information bearing on the
            existence of his claim ... Unlike equitable
16          estoppel, equitable tolling does not depend
            on any wrongful conduct by the defendant to
17          prevent the plaintiff from suing.  Instead it
            focuses on whether there was excusable delay
18          by the plaintiff.  If a reasonable plaintiff
            would not have known of the existence of a
19          possible claim within the limitations period,
            then equitable tolling will serve to extend
20          the statute of limitations for filing suit
            until the plaintiff can gather what
21          information he needs ... However, equitable
            tolling does not postpone the statute of
22          limitations until the existence of a claim is
            a virtual certainty.
23
   Plaintiff also refers to *Veltri v. Building Service 32B-J Pension*
24
   *Fund*, 393 F.3d 318 (2nd Cir. 2004).  In *Veltri*, the Second
25
   Circuit discussed equitable tolling in the context of the failure
26

                                    29

of defendants to comply with federal regulations requiring
defendants to provide Veltri with notice of his right to file an
administrative appeal of his adverse benefits determination and
of the right to file an action challenging that determination in
court.  393 F.3d at 323.  The Second Circuit, after a discussion
of accrual of the claim, stated in pertinent part:

> ... In applying equitable tolling based on
> defendants' concealing conduct, the question
> of whether defendant's concealment also
> prevents accrual of the cause of action so
> that the statute is not actually tolled, but
> rather, never begins to run, is an
> unnecessary exercise insofar as our
> resolution of it would have no effect on the
> result ... Because we hold equitable tolling
> appropriate where defendants fail to comply
> with the regulatory requirement that they
> provide notice to beneficiaries of the right
> to bring an action in court challenging a
> denial of benefits, we need not resolve
> precisely when the underlying cause of action
> accrues. ...
>
> We share the Fund's concern that to allow
> tolling of the statute of limitations 'in
> perpetuity,' would thwart actuarial
> prediction of plan liability and thereby
> threaten the ability of pension plans to
> prepare in advance to meet financial
> obligations simultaneously to both
> beneficiaries and adverse litigants.
> Equitable tolling is an extraordinary remedy
> because if applied too liberally it threatens
> to undermine the purpose of statutes of
> limitations of allowing potential defendants
> predictability and ultimate repose.  However,
> it must be borne in mind that our holding is
> grounded in equitable principles.  We are not
> establishing a simple mechanical rule that
> failure to notify a claimant of her right to
> bring an action in court automatically tolls
> the statute of limitations.  Thus, for
> example, a plaintiff who has actual knowledge
> of the right to bring a judicial action
> challenging the denial of her benefits may

1          not rely on equitable tolling notwithstanding
           inadequate notice from her pension plan ....
2
           Similarly, the equitable defenses of laches
3          and estoppel remain available to defendants
           seeking to avoid unfair surprise from the
4          filing of untimely claims by plaintiffs who
           seek to rely on equitable tolling on the
5          basis of defective notice ....

6  393 F.3d at 325-326.

7      Relying on these cases, plaintiff argues that "Dr. Ryskamp,

8  the Defendant Plans and their predecessors, and their agents have

9  given Ms. Hemphill the classic 'run around" for several years in

10 response to her inquiries for information and documents."  She

11 refers to the allegations in the SAC she never received a summary

12 plan description for any of the Defendant Plans since 1994 until

13 April 29, 2005 when Dr. Ryskamp's attorney provided a summary

14 plan description for only one of the plans.  She refers to the

15 allegations in the SAC that she never received individual account

16 statements showing the amount of her benefits until April 29,

17 2005 when account statements for the years 1994 to 1999 were

18 provided for the Ryskamp-Takayama Plan.  She refers to the

19 allegations that the TPA informed plaintiff to make her inquiries

20 to the plan administrative committees but did not inform her how

21 they could be reached.  She refers to the allegations that the

22 TPA told her in 2002 that she could not obtain a distribution of

23 benefits until Dr. Ryskamp filed tax forms for that year and she

24 refers to the allegations that Dr. Ryskamp failed to respond to

25 her inquiries in 1996, 2003, and 2005.  Plaintiff contends:

26          As a result of the failures of the Defendant

31

Plans and their fiduciaries to provide Ms.
Hemphill with information regarding her
benefits and regarding the plans themselves,
Ms. Hemphill had (and continues to have)
virtually no idea how her benefits were being
handled, how to obtain a distribution of her
benefits, or how to make a claim under any of
the plans' internal claims and appeals
procedures required under ERISA § 503. *See*
29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. *At*
*no point did she receive a written denial of*
*her requests for distribution of benefits or*
*any notice of her rights to bring an action*
*in court* - which are required by federal
regulations .... [Emphasis added]

Defendants reply that plaintiff's assertion of equitable

tolling:

is not supported by any allegation in the SAC
showing that some how, some way, Plaintiff
could allege that the failure to make the
requested distributions, alleged to be
obliged by the domestic relations orders, was
concealed from her. Given all the
allegations by Plaintiff of seemingly endless
allegations of failures by Defendants, it is
clear how she now does not claim she in some
way was prevented from knowing her endlessly
alleged requests were clearly and
continuously rejected. In the absence of
such facts, the argument about equitable
tolling is meaningless. All the cases cited
by Plaintiff rely on conduct by a defendant
which prevents the plaintiff from realizing
her requests for distribution of the fund
were not honored.

Grounds for equitable tolling are alleged based on the non-

responsiveness of defendants and the alleged failures to provide

statutorily required notices of financial information. At the

pleading stage, equitable tolling is viable.

1          **b.   <u>Third Claim for Relief</u>**.

2          Plaintiff further argues that the Third Claim for Relief for

3    breach of fiduciary duty is not time-barred by Section 1113.

4          Section 1113 provides that a claim for breach of fiduciary

5    duty must be brought within: "(1) six years after (A) the date of

6    the last action which constituted a part of the breach ..." or

7    "(2) three years after the earliest date on which the plaintiff

8    had actual knowledge of the breach or violation", whichever is

9    earlier.

10          In so arguing that the Third Claim for Relief is not time-

11    barred, plaintiff refers to *Ziegler v. Connecticut General Life*

12    *Insurance Company*, 916 F.2d 548, 552 (9th Cir. 1990):

13                    The second step of analysis under the ERISA
               statute of limitations directs us to inquire
14                    when Westco had '*actual knowledge*' of the
               alleged breach or violation ... This inquiry
15                    into plaintiff's actual knowledge is entirely
               factual, requiring examination of the record.
16                    Identifying the breach may end the analysis
               in cases where the breach coincides with an
17                    ERISA plaintiff's actual knowledge of the
               breach ... We stress that an ERISA
18                    plaintiff's cause of action cannot accrue and
               the statute of limitations cannot begin to
19                    run until the plaintiff has actual knowledge
               of the breach, regardless of when the breach
20                    actually occurred.  The ERISA statute of
               limitations, 29 U.S.C. § 1113, requires
21                    satisfaction of this second prerequisite, the
               plaintiff's actual knowledge of the breach,
22                    before the statute can begin to run.

23    Plaintiff also refers to *Frommert v. Conkright*, 433 F.3d 254, 272

24    (2nd Cir. 2006), quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181,

25    193 (2nd Cir. 2001):

26                    "'[A] plaintiff has "actual knowledge of the

                                      33

> breach or violation" within the meaning of
> ... § 1113(2), when he has knowledge of all
> material facts necessary to understand that
> an ERISA fiduciary has breached his or her
> duty or otherwise violated the Act.' ...
> Thus, ... 'it is not enough that [plaintiffs]
> had notice that something was awry;
> [plaintiffs] must have had specific knowledge
> of the actual breach of duty upon which [they
> sued].'

Plaintiff's reliance on *Frommert* and *Caputo* appears to be misplaced. In *Barker v. American Mobil Power Corp.*, 64 F.3d 1397 (9th Cir. 1995), the Ninth Circuit cited *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) with approval as holding that the "'fraud or concealment' exception [in Section 1113] applies only when an ERISA fiduciary either 'misrepresent[s] the significance of facts the beneficiary is aware of (fraud) or ... hid[es] facts so that the beneficiary never becomes aware of them (concealment).'" In *Caputo*, the Second Circuit cited *Barker* and other circuit decisions and "decline[d] to follow our sister circuits in fusing the phrase 'fraud *or* concealment' into the single term "fraudulent concealment.'"  Ninth Circuit authority is controlling in resolving this section of the motion to dismiss.

Plaintiff argues that the Third Claim for Relief is not time-barred:

> Dr. Ryskamp and Ryskamp Inc. breached their
> fiduciary duties by, among other things,
> failing to provide Ms. Hemphill with plan
> information, plan documents, an accounting of
> her benefits, and all of the rights and
> privileges afforded to participants and
> beneficiaries of the Defendant Plans and
> their predecessors; diverting plan assets in

34

violation of ERISA; and by engaging in speculative, risky investments ... These breaches, some of which may have begun in the 1990s but which have continued to the present, are within ERISA § 413's six year limitation period, as the SAC alleges actions in violation of Defendants' fiduciary duties that occurred within six years of commencement of this action and the breaches have continued to the present.

Moreover, Ms. Hemphill's claims are subject to the 'fraud or concealment' prong of ERISA § 413, because Dr. Ryskamp's withholding of information from Ms. Hemphill rendered it impossible for her to discover the breaches of fiduciary duty that Ms. Hemphill has alleged in the SAC: the diversion of plan assets, the investment of plan assets in speculative, risky investments, and the failure to properly manage and account for the assets of the Defendant Plans ... Thus, the statute of limitations for the breach of fiduciary duty claim was tolled until Ms. Hemphill discovered these breaches after filing this action and obtaining documents from the TPA in early 2006.

Dismissal of this claim pursuant to Rule 12(b)(6) as time-barred is not appropriate as a matter of law based on defendants' alleged withholding of information, their failures to respond and to provide statutory notices of available remedies.

### c.  <u>Fourth Claim for Relief</u>.

With regard to the Fourth Claim for Relief, plaintiff notes that the Ninth Circuit applies California's three-year statute of limitation set forth in CCP § 338(a) to claims for nondisclosure penalties pursuant to 29 U.S.C. § 1132(c).[1]  *Stone v. Travelers*

---

[1] 29 U.S.C. § 1132(c) provides in pertinent part:

(1) Any administrator ... (B) who fails or refuses to comply with a request for any

1  *Corp.*, 58 F.3d 434, 439 (9th Cir. 1995).  Plaintiff contends that

2  this claim is not time-barred by the three-year statute of

3  limitations because she made requests for an accounting and other

4  information and documents required by ERISA on August 4, 2003,

5  February 3, 2005 and March 29, 2005, all of which currently

6  remain outstanding.  These requests are not time-barred.  Claims

7  under Section 1132(c) prior to October 18, 2002 are potentially

8  time-barred, absent tolling.

9               **d.   <u>Fifth Claim for Relief</u>**.

10      Plaintiff argues that the Fifth Claim for Relief is not

11  time-barred.  Plaintiff notes that the Fifth Claim for Relief

12  seeks, among other things, to impose a constructive trust on the

13  benefits allegedly being wrongfully withheld or retained by the

14  defendants.  Contending that there is no statute of limitations

15  for this type of claim found in ERISA, plaintiff argues that the

16  court must look to the most analogous state statute of

17  ────────────────

18          information which such administrator is
            required by this subchapter to furnish to a

19          participant or beneficiary (unless such
            failure or refusal results from matters

20          reasonably beyond the control of the
            administrator) by mailing the material

21          requested to the last known address of the
            requesting participant or beneficiary within

22          30 days after such request may in the court's
            discretion be personally liable to such

23          participant or beneficiary in the amount of up
            to $100 a day from the date of such failure or

24          refusal and the court may in its discretion
            order such other relief as it deems proper.

25          For purposes of this paragraph, each violation
            ... described in subparagraph (B) with respect

26          to any single participant or beneficiary,
            shall be treated as a separate violation.

limitations, *see Wetzel, supra*, 222 F.3d at 646.   Citing *Nelson v. Nevel*, 154 Cal.App.3d 132 (1984), plaintiff contends that the Fifth Claim for Relief is subject to the four-year statute of limitations set forth in CCP § 343 applicable to claim in equity.

Although defendants do not reply to plaintiff's specific arguments concerning the applicable statute of limitations to be applied to the Fifth Cause of Action, plaintiff's reliance on *Nelson v. Nevel* to impose a four-year statute of limitations does not appear to be well-taken.   Arguably, the Fifth Claim for Relief is governed by the three-year statute of limitations set forth in CCP § 338(4).

*Nelson v. Nevel* involved an action brought by a woman against a man seeking to obtain her share of real property acquired by the parties while they were living together, which property was held in the man's name.   The Court of Appeals ruled in pertinent part:

> 'An action based strictly in equity, as where plaintiff claims an interest in property standing in the defendant's name and acquired during the period of cohabitation and seeks to impose a ... constructive trust, must be brought within four years.' ... '[S]ection 343 of the Code of Civil Procedure providing a four-year statute of limitations applies in "all suits in equity not strictly of concurrent cognizance in law and equity."'
> ....
>
> Respondent argues that appellant's cause of action arises from an implied contract and, therefore, all equitable remedies are merely ancillary to a breach of contract action.   We do not agree ... Significantly, respondent himself cites cases which hold that the *nature of the right claimed*, not the form of

the action, determines the applicability of
the statute of limitations ... 'Neither the
caption, form, nor prayer of the complaint
will be deemed conclusive in determining the
nature of the liability from which the cause
of action flows.  On the contrary, the true
nature of the action will be ascertained from
the basis facts *a posteriori*.' ...  Although
it may have been possible for appellant to
set forth facts constituting a cause of
action for breach of an implied contract
between respondent and herself, she did not
do so.  Her cause of action sounded in
equity.

Respondent's argument that the three-year
period of Code of Civil Procedure section
338, subdivision 4, necessarily governs
appellant's action is also without merit.
Appellant did not, and need not, allege that
respondent breached a duty owed to her based
on a confidential or fiduciary relationship.
As respondent points out, such allegations
constitute an action for constructive fraud
... Respondent relied on *Day v. Greene*[, 59
Cal.2d 404 (1963)] which holds that where
constructive fraud is the gravamen of an
action the three-year limitation period
prescribed in Code of Civil Procedure section
338, subdivision 4, is applicable ...
However, the reasoning of that case is
relevant only when the action is based on
violation of a confidential relationship or a
breach of trust ... *Day v. Greene* does not
apply to actions based strictly in equity ...
Therefore, appellant can simply claim an
equitable interest in the property which now
stands solely in respondent's name and ask
the court to impose a constructive trust ...
The four-year limitation period of Code of
Civil Procedure section 343, which applies to
such equitable action, does not bar
appellant's action.

154 Cal.App.3d at 140-141.

Here, the allegations of the SAC are based on violations an

ERISA trust and of fiduciary duties arising under ERISA.  The

Fifth Claim for Relief seeks to impose a constructive trust based

on those violations.  Consequently, it appears that the three-year statute of limitations should apply to the Fifth Claim for Relief.

Plaintiff further argues that the Fifth Claim for Relief is not time-barred.  Noting that accrual of a claim for relief under ERISA is determined by federal law, *Martin v. Construction Laborer's Pension Trust, supra*, 947 F.2d at 1384, plaintiff argues that federal law recognizes a "discovery rule".  Plaintiff cites *O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002), a case involving CERCLA.  In *O'Connor*, the Ninth Circuit explained:[2]

> [T]he discovery rule provides that a limitation period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim ... Because '[t]he plaintiff must be diligent in discovering the critical facts' a plaintiff who did not actually know of his claim will be barred 'if he should have known [of it] in the exercise of due diligence.' ... A plaintiff is 'held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her.' ... This concept of constructive notice is captured by the maxim that 'the means of knowledge are the same thing in effect as knowledge itself.' ....
>
> In requiring actual or constructive knowledge of the cause of an injury before Plaintiffs

---

[2]In *O'Connor*, the Ninth Circuit noted that California's "discovery rule" provides that a plaintiff discovers a claim when the plaintiff "suspects or should suspect that her injury was caused by wrongdoing."  311 F.3d at 1147.  Because application of California's discovery rule would result in an earlier commencement date for the limitations period, the Ninth Circuit ruled that the federal discovery rule under 42 U.S.C. § 9658 preempts the California rule.

1

> can be deemed to be on notice of their claims
> ..., [a] plaintiff knows or reasonably should
> know of a claim when he or she knows 'both in
> existence and the cause of his injury.' ....

2

3

311 F.3d at 1147.

4

Plaintiff argues that the Fifth Claim for Relief is not

5

time-barred because of the "rule of discovery", because she "only

6

learned in early 2006, after reviewing documents that were

7

obtained from Defendant Plan's former TPA during the course of

8

this lawsuit, that assets of the Defendant Plans, including

9

benefits to which Ms. Hemphill was entitled, may have been

10

distributed or diverted to Ryskamp Inc., Mrs. Ryskamp, the

11

Ryskamp Estate, and/or the Ryskamp Trust."  At that time,

12

plaintiff asserts, she filed the SAC including these allegations.

13

Plaintiff further argues:

14

> Until that time, because of the dearth of
> information Ms. Hemphill was able to obtain
> about the Defendant Plans and their
> predecessors and her benefits, Ms. Hemphill
> could not have reasonably discovered any
> basis for her claim for equitable and
> injunctive relief, regardless of when plan
> assets were distributed or wrongfully
> diverted.

15

16

17

18

19

The Fifth Claim for Relief is not time-barred as a matter of

20

law based on the allegations on the face of the SAC.

21

ACCORDINGLY:

22

1.  Defendants' motion to dismiss the Second Amended

23

Complaint is denied. IT IS SO ORDERED.

24

**Dated:    July 5, 2006             _____/s/ Oliver W. Wanger_____**
emm0d6                              UNITED STATES DISTRICT JUDGE

25

26

40