IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUDY G. HEMPHILL, | No. CV-F-05-1319 OWW/SMS |
| | |
| Plaintiff, | MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION (Doc. 65) |
| vs. | |
| PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES J. RYSKAMP, JR., et al., | |
| Defendant. | |

On October 18, 2005, Plaintiff Trudy G. Hemphill filed a Complaint in this court and proceeds under a Second Amended Complaint (SAC) against the Personal Representative of the Estate of James J. Ryskamp, Jr. (Ryskamp Estate); Ryskamp Inc.; Ryskamp Plan; James J. Ryskamp, Jr., M.D., Inc. Money Purchase Pension Plan ("Ryskamp MP Plan"); James J. Ryskamp, Jr., M.D., Inc. Profit Sharing Plan ("Ryskamp PS Plan"), and Judith Dickison Ryskamp, individually and as Trustee of the James J. Ryskamp, Jr. and Judith Dickison Ryskamp Living Trust ("Ryskamp Trust").  The

1

SAC alleges in pertinent part:

> 9. Defendant Judith Dickison Ryskamp ('Mrs. Ryskamp') is an individual and surviving spouse of Ryskamp.  Upon information and belief, Mrs. Ryskamp is a 'party in interest,' within the meaning of ... ERISA, 29 U.S.C. § 1002(4).  Upon information and belief, Plaintiff further alleges that Mrs. Ryskamp was named in Ryskamp's Last Will and Testament as the executor of the Ryskamp Estate and that Mrs. Ryskamp has petitioned for appointment as the personal representative of the Ryskamp Estate from the California Superior Court for Fresno County in the probate of the Ryskamp Estate.  Upon information and belief, Plaintiff alleges that Mrs. Ryskamp and Ryskamp had a revocable living trust for which Mrs. Ryskamp is the trustee.  Plaintiff further alleges, upon information and belief, that Mrs. Ryskamp was a beneficiary of Ryskamp's benefits under the Defendant Plans and received Ryskamp's benefits from the Defendant Plans following Ryskamp's death.  Thus, Plaintiff sues Mrs. Ryskamp individually as well as in her capacity as the personal representative of the Ryskamp Estate and the trustee of the Ryskamp Trust. ....

Plaintiff moves for summary adjudication in her favor on the First Claim for Relief for declaratory relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(3), the Second Claim for Relief for benefits, to enforce her rights and clarify her rights pursuant to 29 U.S.C. § 1132(a)(1)(B), and the Fourth Claim for Relief for injunctive relief and nondisclosure penalties pursuant to 29 U.S.C. § 1132(c)(1).  Specifically, by this motion Plaintiff seeks the following relief: (1) compel the James J. Ryskamp, Jr., M.D.C, Inc. 401(k) Profit Sharing Plan ("Ryskamp Plan") to provide an accounting of Plaintiff's benefits under the Ryskamp Plan and its predecessor plans; (2) order James J.

Ryskamp, Jr., M.D., Inc. ("Ryskamp Inc."), as administrator of the Ryskamp Plan and its predecessor plans, to pay statutory penalties of $110 per day from September 3, 2003 to the date Plaintiff's motion for summary adjudication is granted; and (3) declare as to all defendants that Plaintiff has the right to receive certain plan documents and an accounting of all of her benefits.

Following the hearing on Plaintiff's motion for summary adjudication, the parties were ordered to file supplemental briefs concerning the availability of declaratory relief against Mrs. Ryskamp because of the provisions of California Probate Code § 9351.  All briefing is now complete.

A.  <u>Factual Background</u>.

1.  <u>Plaintiff's Statement of Undisputed Facts</u>.

In moving for summary judgment, Plaintiff sets forth the following facts as undisputed.

<u>UMF No. 1</u>.  Plaintiff is a participant and beneficiary of the Ryskamp Plan.

Defendants denies this fact, referring to Paragraph 8 of the Declaration of Clarissa A. Kang, plaintiff's attorney, in support of the motion for summary adjudication.  Paragraph 8 avers in pertinent part:

> On July 26, 2006, Ryskamp Inc. served its
> Responses to Plaintiff's Interrogatories, Set
> One.  In response to Interrogatory Number 4,
> Ryskamp Inc. stated, 'The amount of the
> benefits Plaintiff was entitled to are
> described in the QDRO and in the order of the
> Superior Court of the State of California for

1

2

3

4

    the County of Fresno dated August 11, 1994
    described in Plaintiff's Second Amended
    Complaint.  Plaintiff was entitled to the
    benefits, as described in those orders, and
    Respondent is informed and believes the
    benefits were tendered to Plaintiff and
    Plaintiff never signed the forms required for
    distribution to her.'

5

6

Defendants focus on the term "entitled" in denying this fact.  As

7

will be discussed in more detail below, defendants assert that

8

Plaintiff is not a participant or beneficiary of the Ryskamp Plan

9

because her entitlement to benefits is time-barred.

10

    **UMF No. 2**.  The Ryskamp Plan is an employee

11

pension benefit plan within the meaning of ERISA, 29 U.S.C. §

12

1002(2).

13

  This fact is admitted.

14

    **UMF No. 3**.

15

  Plaintiff was a vested participant in the Ryskamp MP Plan,

16

the Ryskamp PS Plan, and the Ryskamp-Pollock Pension and Profit

17

Sharing Plan ("Ryskamp-Pollock Plan").

18

  This fact is admitted.

19

    **UMF No. 4**. The Ryskamp MP Plan and the Ryskamp PS

20

Plan merged into the Ryskamp-Pollock Plan in 1989.

21

  This fact is admitted.

22

    **UMF No. 5**.  The Ryskamp-Pollock Plan terminated

23

and its assets were transferred to the Ryskamp-Takayama 401(l)

24

Profit Sharing Plan ("RT Plan") in 1994.

25

  This fact is admitted.

26

    **UMF No. 6**.  The Ryskamp Plan was the successor

4

1  plan to the RT Plan.

2      This fact is admitted.

3          **UMF No. 7**.  The court in the marital dissolution
4  proceeding between Plaintiff and James J. Ryskamp, Jr.
5  ("Ryskamp") entered a Stipulated Qualified Domestic Relations
6  Order on August 11, 1994 ("Proposed QDRO").

7      This fact is admitted.

8          **UMF No. 8**.  The Proposed QDRO provided for the
9  creation and assignment to Plaintiff, as an alternate payee, the
10  right to $50,000 of Ryskamp's interest in the RT Plan.

11      This fact is admitted.

12          **UMF No. 9**.   The Proposed QDRO also stated that
13  Plaintiff would be entitled to all of the rights and election
14  privileges afforded to active participants under the RT Plan.

15      This fact is admitted.

16          **UMF No. 10**.  The Proposed QDRO required the RT
17  Plan to provide Plaintiff with copies of all notices and
18  information regarding her benefits under the RT Plan, including
19  but not limited to annual reports, annual accounts, and any new
20  or revised retirement booklets or bulletins.

21      This fact is admitted.

22          **UMF No. 11**.  The court in the marital dissolution
23  proceeding between Plaintiff and Ryskamp also entered another
24  order on August 11, 1994 which confirmed Plaintiff's vested
25  interests in the Ryskamp MP Plan, the Ryskamp MS Plan, and the
26  Ryskamp-Pollock Plan ("Dissolution Order").

1   This fact is admitted.

2   **UMF No. 12.  Plaintiff was entitled to the**

3   **benefits described in the Proposed QDRO and the Dissolution**

4   **Order.**

5   This fact is admitted.

6   **UMF No. 13.  Ryskamp Inc. is the plan**

7   **administrator of the RT Plan, the Ryskamp Plan, and their**

8   **predecessors.**

9   This fact is admitted.

10   **UMF No. 14.  On September 18, 1994, Ryskamp, as**

11   **plan administrator and trustee of the RT Plan, certified the**

12   **Proposed QDRO as a qualified domestic relations order and**

13   **approved the distribution of benefits to Plaintiff in accordance**

14   **with the Proposed QDRO.**

15   This fact is admitted.

16   **UMF No. 15.  Ryskamp was the principal of Ryskamp**

17   **Inc.**

18   This fact is admitted.

19   **UMF No. 16.  On May 6, 1996, Plaintiff's**

20   **accountant requested information from David N. Price, whose firm**

21   **was the third party administrator for Rykamp's benefit plans,**

22   **regarding the whereabouts and amount of Plaintiff's benefits**

23   **under the RT Plan, the Ryskamp PS Plan, and the Ryskamp-Pollock**

24   **Plan.**

25   This fact is admitted.

26   **UMF No. 17.  In response to the inquiry made by**

Plaintiff's accountant, Ryskamp and David N. Price failed to provide information regarding the then-current value of Plaintiff's benefits and documents by which Plaintiff could obtain a distribution of her benefits.

This fact is admitted.

UMF No. 18. On or before June 21, 2002, Plaintiff contacted Philip Price of Price Reinhardt Price to obtain account statements of her benefits in the Ryskamp Plan and information regarding the whereabouts and amount of her benefits under the Ryskamp Plan.

This fact is admitted.

UMF No. 19. While Philip Price provided some older account benefit statements (years 1999 and prior), he failed to give Plaintiff information about the current whereabouts and value of her benefits.[1]

This fact is admitted.

UMF No. 20. On June 21, 2002, Philip Price informed Ryskamp that Plaintiff had contacted Price for information needed to take a distribution of her benefits from the Ryskamp Plan, including account statements of her benefits, but Ryskamp did not make any efforts to contact Plaintiff with the information she needed.

This fact is admitted.

---

[1] In Defendants' Reply to Statement of Undisputed Facts of Plaintiff (Doc. 75), Defendants neither admit nor deny this fact. The same is true with respect to UMF Nos. 20-26 and 32. Therefore, these facts are admitted by failure to deny them.

1      **UMF No. 21**.  **On August 4, 2003, Plaintiff sent a**
2 **letter to Ryskamp in which she requested information sufficient**
3 **to obtain a distribution of benefits from the Ryskamp Plan,**
4 **including copies of annual statements of her benefits since 1990.**
5      This fact is admitted.

6      **UMF No. 22**.  **Ryskamp failed to respond to**
7 **Plaintiff's August 4, 2003 request.**
8      This fact is admitted.

9      **UMF No. 23**.  **On November 24, 2003, the Ryskamp**
10 **Plan acknowledged that Plaintiff was entitled to a distribution**
11 **of vested benefits.**
12      This fact is admitted.

13      **UMF No. 24**.  **On December 3, 2004, Plaintiff**
14 **requested orally and in writing to Philip Price, copies of**
15 **account statements of her benefits, summary annual reports, the**
16 **current summary plan description and summary of material**
17 **modifications, and the latest Form 5500 Annual Return/Reports for**
18 **Ryskamp's retirement plans.**
19      This fact is admitted.

20      **UMF No. 25**.  **Philip Price informed Ryskamp of**
21 **Plaintiff's December 3, 2004 request and forwarded to Ryskamp a**
22 **copy of Plaintiff's letter dated December 3, 2004.**
23      This fact is admitted.

24      **UMF No. 26**.  **Plaintiff received no information or**
25 **documents regarding her benefits in response to her December 3,**
26 **2004 letter.**

This fact is admitted.

UMF No. 27.  On February 3, 2005, Plaintiff requested, through Ryskamp's attorney Donald Lescoulie, that Ryskamp provide her with summary plan descriptions, summaries of material modifications, summary annual reports, Form 5500 return/reports, individual account statements showing her plan benefits, and banking and brokerage statements that reveal where her plan benefits were being held and have been held from 1990 to the date of her letter.

This fact is admitted.

UMF No. 28.  Mr. Lescoulie acknowledged receipt of Plaintiff's February 3, 2005 letter but failed to provide any documents responsive to Plaintiff's February 3, 2005 requests.

This fact is admitted.

UMF No. 29.  On March 29, 2005, Plaintiff's lawyers sent a letter to Mr. Lescoulie, requesting an accounting of Plaintiff's interest in the RT Plan and Ryskamp Plan and their predecessors from August 1994 to the date of the letter, copies of the Summary Plan Descriptions, Summaries of Material Modifications, Summary Annual Reports, Form 5500s, and account benefit statements for Plaintiff's interests in the plans.

This fact is admitted.

UMF No. 30.  On April 29, 2005, Ryskamp, through Mr. Lescoulie, provided a limited set of old documents that were responsive only to a small portion of Plaintiff's March 29, 2005 request.  Ryskamp provided no documents for any year later than

1   1999 and provided no accounting of Plaintiff's benefits.

2       This fact is admitted.

3               **UMF No. 31**.  Plaintiff's requests for information

4   about her benefits and the RT Plan, the Ryskamp Plan, and their

5   predecessors remain unfulfilled to date.

6       Defendants deny this fact, contending that Plaintiff admits

7   receipt of a number of items.

8       In her Declaration in support of this motion, Ms. Kang avers

9   in pertinent part:

10              4.  Donald Lescoulie, by letter dated April
                29, 2005, provided only very few of the
11              documents requested by Ms. Hemphill's
                attorneys.  He provided account benefit
12              statements for Ms. Hemphill from the RT Plan
                for plan years 1994 through 1999, but none
13              for any ... other plan or for any years from
                2000 to 2005.  Mr. Lescoulie also provided a
14              limited number of outdated Form 5500s – Form
                5500-C/R for plan year 1994 of the Ryskamp-
15              Pollock Plan which was designated as a final
                return and Form 5500s and 5500 C/R for the RT
16              Plan from 1996 to 1999.  No more recent Form
                5500s and no annual reports were produced.
17              Finally, Mr. Lescoulie produced a summary
                plan description for the RT Plan dated July
18              1993 but no other summary plan descriptions
                and no summaries of material modifications.
19              While Mr. Lescoulie stated in his letter that
                other, more recent documents would be
20              produced shortly, no additional documents
                followed the April 29, 2005 letter.
21
                5.  On May 24, 2006, in the course of this
22              action, Ms. Hemphill served Requests for
                Production of Documents to ... Ryskamp Inc.,
23              Judith Dickison Ryskamp, the RT Plan and ...
                the Ryskamp Plan ... Among the Defendants'
24              responses, served on July 26, 2006, the
                Defendants provided a summary annual report
25              for plan year 1999 for the RT Plan.  Of the
                documents produced in the July 26, 2006
26              discovery responses, this 1999 summary annual

report was the only document which was both
(1) responsive to Ms. Hemphill's pre-
litigation requests for documents and
information and (2) not previously produced
by Mr. Lescoulie.

6.   To date, Ms. Hemphill has never received
from Ryskamp Inc. the following documents
which she has requested in writing for years:
account statements of her benefits from 2000
to the present, an accounting of her
benefits, summary annual reports from 1990 to
1998 and from 2000 to present, Form 5500
annual returns from 1990 to 1993, 1995, and
from 2000 to present, summary plan
descriptions from 1990 to present (except for
one summary plan description for the RT Plan
dated July 1993), and summaries of material
modifications from 1990 to present.

2.   **Defendants' Statement of Disputed Facts**.

In opposing this motion, Defendants have submitted a

Statement of Disputed Facts.

**DMF No. 1**.  On or about September 15, 1994,

Plaintiff asked the administrator of the plans for paperwork to

enable her to request distribution of the $50,000, the $5,668 and

the $4,600.  She was told by the administrator she would not

receive distribution paperwork.

In so asserting, Defendants refer to paragraph 24 of the

SAC.  Plaintiff correctly responds that this statement of fact

does not completely describe the allegations in paragraph 24 of

the SAC:

24.  On or about September 15, 1994, Ms.
Hemphill received papers from the Defendant
Plans' third party administrator (the 'TPA')
regarding her right to elect distribution of
the smallest of the four benefit amounts –
the $2,661 – specified in the August 11, 1994
Orders.  She did not receive any papers

11

> regarding distribution of the three larger
> amounts - the $50,000, the $5,668 and the
> $4,600.  When Ms. Hemphill asked the TPA
> about distribution of the three larger
> amounts, the TPA informed her that she would
> not receive distribution paperwork *for the
> three larger amounts until the forms for the
> smallest amount were completed and returned*.

[Emphasis added].  Plaintiff contends that Defendants have not

raised a genuine issue of material fact because the extrapolation

from paragraph 24 of the SAC is incomplete and provides a false

inference.

      DMF No. 2.  In mid-1996, Plaintiff's accountant

requested on Plaintiff's behalf, distribution and accounting of

the $50,000, the $5,668, the $4,600 and the $2,661.  Ryskamp did

not provide the distribution election form to her.

    This fact is admitted that Plaintiff does not dispute she

did not receive benefit distribution forms in 1996.

      DMF No. 3.  Plaintiff contacted the TPA directly

in 2002 to request distribution of her benefits in the Defendant

Plans and the TPA told her she could not receive a distribution

at that time.

    In so asserting, Defendants refer to paragraph 26 of the

SAC.  Again, as Plaintiff correctly notes, this statement of

disputed fact does not correctly describe the allegations in

paragraph 26 of the SAC:

> 26.  Ms. Hemphill contacted the TPA directly
> in 2002 to request distribution of her
> benefits in the Defendant Plans.  The TPA
> referred Ms. Hemphill to make her inquiries
> to the Ryskamp, Inc. 'plan administrative
> committee' but did not inform her how to

12

1                   **contact the plan administrative committee.**

               **The TPA further informed Ms. Hemphill that**

2                   **she could not receive a distribution from the**

               **Defendant Plans *because Ryskamp had not yet***

3                   ***filed tax forms for year 2001 and that she***

               ***would have to wait until his tax forms were***

4                   ***filed before she could receive any benefits.***

**[Emphasis added]. Plaintiff contends that Defendants have not**

**raised a genuine issue of material fact because the reference to**

**paragraph 26 is incomplete and because Ryskamp never filed the**

**tax forms.**

               <u>**DMF No. 4**</u>**.  The Probate Court of the Superior**

**Court of California for Fresno County appointed Judith Ryskamp as**

**the executor of the Estate of James J. Ryskamp, Jr., M.D.,**

**deceased.  The Court issued to her letters testamentary on March**

**23, 2006.**

     **This fact is admitted by Plaintiff.**

               <u>**DMF No. 5**</u>**.  Until receipt of the summons and a**

**complaint in this matter, Judith Ryskamp had never heard of a**

**James J. Ryskamp, Jr. and Judith Dickison Ryskamp Living Trust.**

**She is not aware of a trust by that name or any other trust**

**concerning James J. Ryskamp, Jr. and her, or her.  Judith Ryskamp**

**is not the trustee of any such trust and has never been the**

**trustee of any such trust involving James J. Ryskamp, Jr. and**

**her, or her.  She is not aware of being a beneficiary of any such**

**trust.**

     **Plaintiff responds that this does not raise a genuine issue**

**of material fact because it is irrelevant to resolution of her**

**Motion for Summary Adjudication.**

1   **DMF No. 6**.  The Creditor's Claim of Plaintiff

2   includes a copy of the Second Amended Complaint in this action

3   and it was written under penalty of perjury by Plaintiff.

4       Plaintiff not dispute this fact.

5       **DMF No. 7**.  Judith Ryskamp has not received any

6   benefits of James J. Ryskamp, Jr., M.D. under the plans described

7   in the SAC in any capacity, without limitation hereby, as an

8   individual, as the executor of the Estate of James J. Ryskamp,

9   Jr., M.D., or as the trustee of any trust.

10      Plaintiff responds that this does not raise a genuine issue

11  of material fact because it is irrelevant to resolution of the

12  Motion for Summary Adjudication.

13      **DMF No. 8**.  Judith Ryskamp has never been and is

14  not now an employee, officer, director or shareholder in James J.

15  Ryskamp, Jr., M.D., Inc.  As the executor of the Estate of James

16  J. Ryskamp, Jr., M.D., she expects to be stakeholder of the

17  shares of James J. Ryskamp, Jr., M.D., Inc. until the Probate

18  Court authorizes the payment of creditor claims and distribution,

19  if any, of the proceeds of liquidation of the assets of James J.

20  Ryskamp, Jr., M.D., Inc. or a distribution in kind of the stock.

21      Plaintiff responds that this does not raise a genuine issue

22  of material fact because it is irrelevant to resolution of the

23  Motion for Summary Adjudication.

24      **DMF No. 9**.  Judith Ryskamp has never had any

25  discretionary authority over James J. Ryskamp, Jr., M.D., Inc. or

26  any of the plans mentioned in the SAC until she was issued

14

letters testamentary by the Probate Court on March 23, 2006.  She has no documents described in the SAC except for some of those that were already provided to Plaintiff according to the SAC.

Plaintiff again responds that this does not raise a genuine issue of material fact because it is irrelevant to resolution of the Motion for Summary Adjudication.

B.  <u>Standards Governing Resolution of Motion for Summary Adjudication</u>.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Materiality is determined by the substantive law governing a claim or a defense.  *Id*.  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  *Id*.

The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party to defeat summary judgment.  *T.W. Elec.*, 809 F.2d at 630.  The nonmoving

15

party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." *Id*.  The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *Id*.  The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995).  This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff." *Id*.  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." *Id*.  As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-1103 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract.  Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant.  Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant.  Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens

16

of persuasion: The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial.

A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant - has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment ... In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial ... In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact ....

If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial ... In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything ... If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense ... If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment ... But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion.

C.   <u>Merits of Motion</u>.

Pursuant to 29 U.S.C. § 1024(b)(1), the plan administrator "shall furnish to each participant, and each beneficiary

17

receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a)(1) of this title" "within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits" and "shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrated all plan amendments made within such five-year period" unless no amendments have been made during the five-year period. Section 1024(b)(1) further provides in pertinent part that, "[i]f there is a modification or change described in section 1022(a)(1) of this title ..., a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." Section 1024(b)(3) provides that, "[w]ithin 201 days after the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report." The statements and schedules described in Section 1023(b)(3)(A) and

(B) are "a statement of the assets and liabilities of the plan aggregated by categories and valued at their current value, and the same data displayed in comparative form for the end of the fiscal year of the plan" and "a statement of receipts and disbursements during the preceding twelve-month period aggregated by general sources and applications".  Pursuant to 29 U.S.C. § 1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated."  29 U.S.C. § 1025(a) provides:

> Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information -
>
> (1) the total benefits accrued, and
>
> (2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

Section 1132(c)(1)(B) provides in pertinent part:

> Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's

19

> discretion be personally liable to such
> participant or beneficiary in the amount of
> up to $100 a day from the date of such
> failure or refusal, and the court in its
> discretion order such other relief as it
> deems proper. ....

Pursuant to 29 C.F.R. § 2570.502c-1, the maximum daily liability
has been increased to $110 a day.

Plaintiff argues that there is no genuine dispute that she
is a participant and beneficiary under the Ryskamp Plan entitled
to the documents and information described above.

29 U.S.C. § 1002(7) defines the term "participant" as "any
employee or former employee of any employer ... who is or may
become eligible to receive a benefit of any type from an employee
benefit plan which covers employees of such employer ...."   In
*Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 118 (1989),
the Supreme Court held:

> [T]he term 'participant' is naturally read to
> mean ... former employees ... who have 'a
> colorable claim' to vested benefits ... In
> order to establish that he 'may become
> eligible for benefits,' a claimant must have
> a colorable claim that ... he will prevail in
> a suit for benefits ....

29 U.S.C. § 1056(d)(3)(J) provides that "[a] person who is an
alternate payee under a qualified domestic relations order shall
be considered for purposes of any provision of this chapter a
beneficiary under the plan."

Plaintiff argues that she has demonstrated more than a
"colorable claim" to benefits.  Defendants have admitted that she
was a vested participant in several of the plans that eventually

20

merged into the Ryskamp Plan and have admitted that she is
entitled to the benefits described in the Proposed QDRO and the
Dissolution Order.  Defendants admit that Ryskamp certified the
Proposed QDRO as a qualified domestic relations order on
September 8, 1994.  Furthermore, on November 24, 2003, the
Ryskamp Plan acknowledged that Plaintiff was entitled to a
distribution of vested benefits.

Defendants argue that there is a triable issue of fact
whether Plaintiff is a beneficiary or participant in any of the
plans: "If her claims for benefits have been barred by any
statute of limitations, she no longer is eligible to receive
benefits nor is she entitled to a benefit."  Because, defendants
contend, there is an issue of fact whether Plaintiff is a
participant or beneficiary, Plaintiff is not entitled to summary
adjudication as requested in this motion.

In *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026 (9th
Cir.2006), the Ninth Circuit addressed "an issue of first
impression in this circuit: whether ERISA's statute of
limitations may bar a claim for benefits [under 29 U.S.C. §
1132(a)(1)(B) notwithstanding a plan's failure to fulfill its
disclosure and review obligations under ... 29 U.S.C. § 1133
[requiring plans to provide adequate notice in writing that a
claim for benefits has been denied, the specific reasons for the
denial and providing a reasonable opportunity for full and fair
review by the fiduciary of the decision denying the claim for
benefits]."  455 F.3d at 1029.  Chuck had worked for Hewlitt

21

Packard (HP) from 1968 to 1972 and again from 1974 to 1980.   In 1978 and 1979, HP calculated Chuck's pension credit and provided him with annual benefit statements as if there had been no break in service with HP.   Shortly before Chuck's retirement from HP in December 1980, HP recalculated Chuck's accrual of benefits in light of the break in service, which resulted in a significant decrease in the benefits vested to Chuck under the Plan.   Chuck promptly brought to HP's attention his dispute with the benefits recalculation, contending that he was entitled to the original, higher benefits calculation as a condition of his agreement to return to HP in 1974.   In late December 1980, soon after Chuck's retirement, HP sent Chuck a "Retirement Benefit Claims Form" with instructions regarding the election of a method for pension benefit payment.   The option to receive a lump sum payment had been pre-selected for Chuck, and every other option had been crossed out.   The form also noted that "[o]nce a lump sum benefit payment has been elected or approval for lump sum payment obtained, the choice is irrevocable."   Chuck never returned this form because instructions on the form signaled that an annuity commencing at age 65 would be the default method of payment to Chuck if no timely election were made.

Chuck then wrote a letter to an HP administrator asking that the amount of his vesting as announced on that form be corrected to reflect his original hire date with HP in 1968.   A Plan administrator sent a letter to Chuck dated January 28, 1981, in which she re-affirmed the decrease in Chuck's vested benefits and

explained that the change was due to the break in service.  The letter also declared that corrected trust statements for 1978 and 1979 were attached and that Chuck would be receiving shortly his final trust statement for the October 31, 1980 quarter.  Chuck admitted that he was aware at this time that HP was going to take the position that he was not eligible for any further pension benefits.  Soon afterward, Chuck received a lump sum payment which in HP's view constituted a full and complete distribution of Chuck's benefits under the Plan.

In late 1991 and early 1992, Chuck sent a series of letters to HP seeking clarification of the benefits he could anticipate receiving when he retired.  HP replied in a letter dated March 6, 1992 that Chuck had been paid his benefits in 1981 and that no further retirement benefits were payable under the Plan.  For the next several years, and then again starting in 2001, Chuck sent numerous letters to HP seeking to reestablish his entitlement to a benefits calculation based on continuous service with HP.  Some of these letters also requested basic Plan documentation, which HP had never given Chuck.  HP did not respond to many of these letters and did not provide Chuck with the Plan documentation.  Chuck filed his complaint in the district court on December 5, 2003.  HP's motion for summary judgment was granted, the district court ruling that ERISA's statute of limitations barred Chuck's benefits claim and related fiduciary duty claims and that consequently Chuck lacked standing under ERISA to bring his claims for plan documents and information.  *Id.* at 1030-1031.

Chuck appealed.  The Ninth Circuit selected the statute of limitations governing claims for benefits under an ERISA as the most analogous state statute.[2]  Accrual of the cause of action for benefits is determined by Federal law:

> We have earlier established that 'an ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied.' ... A participant need not file a formal application for benefits before having 'reason to know' that his claim has been finally denied ... Instead, a cause of action accrues when a pension plan communicates 'a clear and continuing repudiation' of a claimant's rights under a plan ... such that the claimant could not have reasonably believed but that his benefits had been 'finally denied.' ....

455 F.3d at 1031.  In affirming the district court, the Ninth Circuit concluded that HP had not complied with the requirements of 29 U.S.C. §§ 1133(1) and (2) or the regulations set forth in 29 C.F.R. § 2560.503-(f).  *Id.* at 1032-1033.  Noting that an earlier case, *White v. Jacobs Eng'g Group Long Term Disability Plan*, 896 F.2d 344 (9th Cir.1989), held that a Plan's noncompliance with these obligations prevented a statute of limitations period from beginning to run.  The Ninth Circuit concluded that *White* had addressed only whether the Plan's

---

[2]In the Order Denying Defendants' Motion to Dismiss filed on July 5, 2006, amended *nunc pro tunc* by Order filed on July 11, 2006 (hereinafter referred to as the July 5 Order), it was ruled that the California's four-year statute of limitations for suits on written contracts (CCP § 337) applies to an ERISA cause of action based on a claim for benefits under a written contractual policy, citing *Wetzel v. Lou Ehlers Cadillac*, 222 F.3d 643, 646-648 (9th Cir.2000).

inadequate notice could prevent the start of a contractual

limitations period, i.e., a limitations period defined in the

Plan itself.  *Id*.  The Ninth Circuit held:

> Although many considerations remain constant
> across both contexts, we are persuaded of
> three slight but relevant distinctions
> between statutory and contractual time bars
> in the ERISA context.  Because of these
> distinctions, we hold that a plan's violation
> of § 1133 does not always prevent the
> triggering of ERISA's statutory limitations
> period.

*Id*.  The first distinction, the Ninth Circuit ruled, is the

trigger for ERISA's statute of limitations on a claim for

benefits requires examination whether a claimant "could have

reasonably believed his benefits had not been finally denied" or

whether instead he had "reason to know" of a "clear and

continuing repudiation" of his claim for benefits.  *Id.*  The

Ninth Circuit concluded with regard to this distinction:

> A plan's failure to comply with its
> disclosure and review obligations under §
> 1133 is highly relevant to this inquiry, to
> be sure.  It is indisputable that the clarity
> and apparent finality of a benefits denial
> are easily affected by whether the plan
> discloses its justifications for the denial
> and by whether there has been a reasonable
> opportunity for full and fair review of that
> denial.  In this vein, for example, it is
> clear that the statute of limitations does
> not begin to run if a plan's disclosure was
> so inadequate that a claimant did not even
> have reason to know about the denial.  *See*
> *Price v. Provident Life and Acc. Ins. Co.*, 2
> F.3d 986, 988 (9th Cir.1993).  Even where a
> claimant does have reason to believe that
> benefits might have been denied, a plan's
> compliance with § 1133 serves crucial
> information-providing and signaling functions
> that lend certainty to a claimant's

25

understanding whether a given denial is final or appealable.  A plan's failure to comply with § 1133, conversely, deprives claimants of a congressionally mandated means of knowing the proper import of, and response to, a benefits denial.  Even in cases in which a denial might otherwise seem final, a plan's failure to comply with § 1133 could deprive a claimant of 'reason to know' that the denial was final.

Nevertheless, in unusual circumstances, a claimant may well have reason for such knowledge notwithstanding a plan's violation of its notification and review obligations under § 1133.  In particular, a claimant's own actions or knowledge might serve to obviate the need for § 1133 information.  A claimant with actual knowledge of his internal appeal rights under a plan, for example, could not contend that a benefits denial was non-final simply because the plan did not remind him of these rights.  *Cf. Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2nd Cir.2004)(noting that 'a plaintiff with actual knowledge of the right to bring a judicial action challenging the denial of her benefits may not rely on equitable tolling notwithstanding inadequate notice from her pension plan'); *I.V. Servs. of America, Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51 (1st Cir.1999)(refusing to equitably toll a contractual limitations period and finding 'critical' the fact that the claimants had had actual knowledge of the accrual of their cause of action).  Although this class of cases may not be vast, its existence counsels us that a plan's § 1133 violation cannot create a *per se* bar against application of ERISA's statute of limitations.

*Id.* at 1033-1034.  The second distinction between the enforcement of contractual and statutory limitations periods noted by the Ninth Circuit "relates to the policies underlying these limitations periods":

With regard to a contractual limitations

period, we have determined that 'holding that
inadequate notice does not trigger a ... time
bar will not create a significant problem of
stale claims,' for plan administrators would
have just as much capacity and incentive 'to
avoid the contingent liability of stale
claims by ceasing to rely on benefit
termination form letters and giving adequate,
specific notice.' *White*, 896 F.2d at 352.
To a large extent, this reasoning is
applicable in the statutory context as well,
for plans have the identical capacity and
incentives to avoid stale claims.  But it is
also apparent that the ongoing passage of
time elevates both the burden imposed by a
stale claim and the difficulty in resolving
it.  This effect is why, despite ERISA's goal
of providing ready access to courts, and
despite the absence of any express statute of
limitations for benefits claims under ERISA,
the federal courts have long applied a
statute of limitations to such claims as a
matter of federal common law ...  We have
found that the 'policy of finality and
repose' has particular traction against
allowing ERISA claims after potentially
extreme delays, given their increased
'negative effects on the availability of
witnesses and evidence.' ....

Thus, there is at least some difference
between allowing a claim to be filed several
years after the expiration of a plan's time
bar but before the expiration of ERISA's
statute of limitations (at least in cases in
which ERISA's limitations period ends later),
and allowing a claim to be filed in
perpetuity.  While plan administrators have
the capacity and the incentive to avoid stale
claims of either sort, perpetual liability
opens a door more widely to claims whose
underlying events have long passed, elevating
concerns regarding the plan's abilities to
anticipate its financial obligations
adequately.  *Cf. Veltri*, 393 F.3d at 325 ('We
share the ... concern that to allow tolling
of the statute of limitations "in
perpetuity," would thwart actuarial
prediction of plan liability and thereby
threaten the ability of pension plans to
prepare in advance to meet financial

27

obligations simultaneously to both
beneficiaries and adverse litigants.'). Most
significant, such concerns are particularly
elevated once a claimant has clear reason to
know that denial of benefits is final, for at
that point there is diminished justification
for indefinitely allowing the claimant to sit
on the matter rather than bring his suit in
federal court.

*Id.* at 1034. The third distinction between contractual and

statutory limitations periods identified by the Ninth Circuit is

the claimants' access to meaningful remedies:

Clearly, ensuring the availability of both
administrative and judicial remedies is a
central purpose of the ERISA regime. We have
previously noted that adequacy of notice is
'important to [claimants'] ability to obtain
full and fair reviews of their claims,' and
the statute and regulations 'reveal a purpose
to aid claimants in avoiding the obstacles a
plan may place in their paths to the appeals
board.' *White*, 896 F.2d at 351. ERISA
likewise reveals a purpose of removing
obstacles in claimants' paths to the courts.
Indeed, Congress expressly declared that a
central policy goal in creating ERISA was to
protect participants' interests 'by requiring
the disclosure and reporting to participants
and beneficiaries of financial and other
information with respect thereto ... and by
providing for appropriate remedies,
sanctions, and ready access to the Federal
courts.' 29 U.S.C. § 1001(b). In keeping
with Congress' goal of providing 'ready
access to the Federal courts,' we must remain
mindful that 'ERISA is remedial legislation
which should be liberally construed in favor
of protecting participants in employee
benefit plans.' ....

One of the most significant remedial concerns
regarding the enforcement of contractual
limitations periods, however, is somewhat
mitigated in the context of enforcing ERISA's
statute of limitations. If, despite a plan's
insufficient notification to the claimant,
ERISA's limitations period is enforced -

28

unlike the enforcement of contractual
limitations periods - plan boards still would
not be entirely capable of 'deter[ring]
claimants from timely appealing by sending
vague and inadequate appeal notices.'  *White*,
896 F.2d at 351; *cf. Chappel v. Lab. Corp. of
America*, 232 F.3d 719, 726 (9th
Cir.2000)(noting that missing the deadline
for invoking a plan's administrative
procedures would 'entirely foreclose[]'
judicial review).  After all, a claimant
could still potentially seek a remedy in
federal court by filing a timely claim under
29 U.S.C. § 1132(a)(3) to enforce the
notification and review requirements of §
1133 - a claim for which the exhaustion of
internal dispute procedures would not be
required ... Such a suit would remove 'the
obstacles a plan may place in [claimants']
paths to the appeals board,' *White*, 896 F.2d
at 351, for the usual remedy for a violation
of § 1133 is 'to remand to the plan
administrator so the claimant gets the
benefit of a full and fair review.' ....

Granted, the availability of federal courts
to hear such suits provides only a very
limited safety valve for claimants.  After
all, these suits effectively require
claimants to learn independently of their
internal appeal rights, when Congress and the
Department of Labor have, to the contrary,
explicitly placed the burden of plans of
informing claimants of those rights.  *See* 29
U.S.C. § 1133; 29 C.F.R. § 2560.503-1.
Nevertheless, it is a safety valve that is
most likely to be meaningful for the
occasional claimant who had not basis other
than the ERISA statute itself for learning of
his internal appeal rights but who had
received unmistakable notification from a
plan that its decision was final.

*Id.* at 1034-1036.  The Ninth Circuit held:

We recognize that, as between the enforcement
of contractual and statutory time bars, these
distinctions are not great.  Nevertheless, we
find it significant that they are all
relatively salient in the case of a claimant
who, despite the § 1133 violation, still has

29

> **clear reason to know that the plan's denial**
> **of benefits is final.  We are therefore**
> **persuaded that a plan's noncompliance with §**
> **1133 does not prevent *per se* the triggering**
> **of ERISA's statute of limitations.  Instead,**
> **we hold what, while a great deal of caution**
> **is necessary before finding a claim barred by**
> **ERISA's statute of limitations**
> **notwithstanding a plan's violation of § 1133,**
> **an investigation of the facts of each case is**
> **necessary to determine whether a plan**
> **nevertheless foreclosed a claimant from any**
> **reasonable belief that the plan had not**
> **finally denied benefits.**

*Id.* at 1036.  The Ninth Circuit then ruled that under the facts

before it, the claim for benefits was time-barred under ERISA's

statute of limitations notwithstanding HP's failure to notify

Chuck of his appeal rights or of the full justification for its

denial of benefits "because a number of factors ..., taken

together, close off any possibility that Chuck could have

reasonably believed the denial of his benefits was not final

...."   *Id.* at 1036-1038.

    These factors were Chuck's knowledge before he resigned in

1980 that HP was going to take the position that he was not

eligible for further pension benefits beyond those to which he

was entitled at the decreased vesting rate; the Plan did

consistently communicate to Chuck that it was taking this

position; Chuck had actual notice that a lump sum payment, if

made, would constitute his only payment option; Chuck had notice

that his acceptance of the lump sum payment would be irrevocable;

Chuck accepted the lump sum payment in the amount set by HP

without conditioning the acceptance of that lump sum payment on

the reservation of his claim to greater benefits; HP's letter to

Chuck in 1992 noting that the Plan had paid the benefits in 1981

and unequivocally announcing that no further retirement benefits

were payable.  *Id.*  The Ninth Circuit then addressed Chuck's

claims for statutory damages under 29 U.S.C. § 1132(c) for the

Plan's failure to provide him with Plan-related documents:

> If Chuck is not a 'participant or
> beneficiary' of the Plan, however, he lacks
> standing to bring these claims under §
> 1132(a)(1).  *See Crotty v. Cook*, 121 F.3d
> 541, 544 (9th Cir.1997).  As Chuck does not
> claim to be a beneficiary, the issue here is
> whether Chuck is a 'participant,' a term that
> ERISA defines in relevant part as 'any ...
> former employee ... who is or may become
> eligible to receive a benefit of any type
> from an employee benefit plan ....'  29
> U.S.C. § 1002(7).
>
> The Supreme Court has held that, '[i]n order
> to establish that he or she "may become
> eligible" for benefits, a claimant must have
> a colorable claim that (1) he or she will
> prevail in a suit for benefits, or that (2)
> eligibility requirements will be fulfilled in
> the future.'  *Firestone Tire & Rubber Co.* ...
> Chuck does not contend that he fits into the
> second category, so the issue we face is
> whether Chuck had a colorable claim that he
> would prevail in a suit for benefits.  Our
> examination concerns Chuck's status as of the
> time he filed his complaint.  *See McBride v.
> PLM Int'l, Inc.*, 179 F.3d 737, 749-750 (9th
> Cir.1999).
>
> As a preliminary matter, we note that Chuck
> cannot bootstrap standing based on this same
> claim for statutory damages under § 1132(c),
> because awards for damages under ERISA do not
> qualify as a possible 'benefit' for which a
> participant may become eligible under 29
> U.S.C. § 1002(7).  *See Kuntz v. Reese*, 785
> F.2d 1410, 1411 (9th Cir.1986), *abrogated on
> other grounds by Kayes v. Pac. Lumber Co.*, 51
> F.3d 1449, 1455 (9th Cir.1995).  Instead,

> **Chuck must rely on his claim under §
> 1132(a)(1)(B), which challenged directly the
> Plan's denial of pension benefits.**
>
> **As we have discussed above, however, Chuck's
> claim for benefits was clearly time-barred
> when he filed this suit, in light of Chuck's
> own actions and understandings.  In agreeing
> with the district court's decision on summary
> judgment that Chuck's benefits claim is time-
> barred, we have necessarily concluded that no
> reasonable trier of fact could have decided
> the issue in Chuck's favor ... Accordingly,
> it is certain that Chuck's claim is time-
> barred, and a claim that is clearly time-
> barred because of the claimant's own actions
> is not 'colorable' for the purposes of
> establishing ERISA standing.  *See Adamson v.
> Armco, Inc.*, 44 F.3d 650, 654 (8th Cir.1995).
> At the time he initiated this lawsuit, Chuck
> therefore was not a plan 'participant' under
> § 1002(7), and thus he lacks standing to
> bring his claims under the Plan under §
> 1132(a)(1)(A).**

*Id.* at 1039.

Here, because the SAC also sets forth a claim for

distribution of benefits under Section 1132 in the Second Cause

of Action, *Chuck* is authority that Plaintiff's standing as a

participant or beneficiary must be determined as of the date this

action was filed and that, if there is a question of fact whether

the statute of limitations on her claim for benefits has run, her

motion for summary adjudication must be denied.[3]

---

[3]In *Astor v. International Business Machs. Corp.*, 7 F.3d 533,
538 (6th Cir.1993), cited with approval in *McLeod v. Oregon
Lithoprint Inc.*, 46 F.3d 956, 958 n.3 (9th Cir.1995), *vacated on
other grounds*, 517 U.S. 1116 (1996), the Sixth Circuit held:

> **In determining who is a 'participant,' for
> purposes of standing, the definition found in
> 29 U.S.C. § 1002(7) must be read in the
> context of traditional concepts of standing,**

1    Recognizing this possibility, Plaintiff, in her reply brief,

2  attempts to distinguish *Chuck*.  First, she contends that, in

3  *Chuck*, Chuck's status was the same at the time his action was

4  filed as it was when he requested documents from the plan

5  administrator.  Furthermore, Plaintiff notes that *Chuck* relied on

6  *McBride v. PLM Intern., Inc.*, 179 F.3d 732 (9th Cir.1999), as

7  authority that standing is determined by the status of the

8  plaintiff at the time the action is commenced.  Plaintiff asserts

9  that *McBride* "acknowledged that the determination of ERISA

10 standing at the time the action is filed is not appropriate for

11 all cases and then proceeded to measure participant or

12 beneficiary status as of a time prior to the filing of the

13 complaint."

14    *Chuck*'s citation to *McBride* was to the *dissenting* opinion.

15

---

16            not in the context of adjudicating the
            ultimate issue of the merits of plaintiffs'
17          claim that they are not receiving the full
            extent of the benefits to which they are
18          entitled from the employee benefit plan ...
            The doctrine of standing is concerned with
19          whether a person is the proper party to
            request adjudication of a particular issue,
20          whether a person has alleged such a personal
            stake in the outcome of a justiciable
21          controversy that [she] should be entitled to
            obtain its judicial resolution.  Standing
22          focuses on a person's efforts to get [her]
            complaint before a court and not on the issue
23          [she] wishes to have adjudicated.

24 The Ninth Circuit's citation of the Sixth Circuit case does not
   appear to contradict the holding in *Chuck* because *Chuck* only looked
25 to the statute of limitations, not the merits of the claim for
   benefits.
26

The *majority* opinion in *McBride* addressed standing of a participant or beneficiary who brings a claim under 29 U.S.C. § 1140 making it illegal to discharge an employee (whistleblower) for exercising his or her rights under the benefit program or ERISA.   In pertinent part, the Ninth Circuit held:

> The concept of measuring ERISA standing at the time an action is filed is a judicially created requirement which is appropriate for most circumstances, but not for the situation we face in this case.   Section 1140 forbids employers and other ERISA entities from interfering with certain protected rights and is enforceable through ERISA's civil enforcement mechanism in section 1132. Depriving a plaintiff of standing to sue under ERISA for the employer's clear violation of section 1140 would, in effect, make standing contingent upon the occurrence of subsequent events entirely within the control of the employer ....

> When an individual alleges ... that he was discharged in violation of ERISA's whistleblower provisions, his employer cannot be allowed to evade section 1140 accountability simply by terminating the plan and distributing the benefits.   Nothing in *Firestone* commands such a result ... If an employee is a participant at the time of the alleged ERISA violation and alleges that he was discharged or discriminated against because of protected whistleblowing activities, we hold that such an employee has standing to sue under ERISA.   To require that the claimant be a participant at the time of filing suit would undermine the very purpose of ERISA's whistleblower provision: to provide a federal remedy for discrimination against plan participants for exercising their protected rights under ERISA.

179 F.3d at 743.   The *dissent* in *McBride*, cited with approval in *Chuck*, stated in pertinent part:

> It is the settled law of this Circuit that a

34

person's standing as a plan participant 'must be decided as of the time of the filing of the lawsuit.' ....

Because the Plans had terminated before McBride's complaint was filed, he did not have a reasonable expectation of returning to covered employment.  Nor did he have a colorable claim to vested benefits: McBride's benefits under the Plan had already been distributed to him ... Because he had neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, McBride was not a participant in an ERISA plan at the time he filed suit.  He therefore lacked standing to bring a claim under § 1132.

179 F.3d 749-750.

The Ninth Circuit's position on determination of standing is clear.  Unless the complaint alleges a violation of Section 1140, not here alleged by Plaintiff, whether she is a participant or beneficiary is determined as of the time the complaint is filed. The threshold issue in resolving this motion is whether there is a genuine issue of material fact that Plaintiff's claim for benefits is time-barred.  The statute of limitations is an affirmative defense that Defendants bear the burden of establishing.  *See Entous v. Viacom Intern., Inc.*, 151 F.Supp.2d 1150, 1154 (C.D.Cal.2001).

Defendants contended at the hearing that the 1994 QDRO provided that the distribution of benefits to Plaintiff should be made as soon as feasibly possible.  Thereafter, Defendants argued, Plaintiff requested distribution in 1994 and did not get it, requested distribution in 1996 and did not get it, and requested distribution in 2002 and did not get it.  Defendants

35

contend that the Plan's failure to make those requested distributions to Plaintiff, constitutes a clear and continuing repudiation of Plaintiff's rights under the Plan such that Plaintiff could not have reasonably believed other than that her benefits had been finally denied.

The allegations of Paragraph 24 of the SAC do not constitute such evidence.  Defendants mischaracterize the allegation, contending that Plaintiff was then told by the TPA that she would not receive distribution paperwork.  Defendants ignore the averment that Plaintiff was told in September 1994 by the TPA that she would not receive distribution paperwork for the three larger distributions to which she was entitled *until* the forms for the smallest amount were completed and received.  This is a conditional denial, not a clear repudiation.  Paragraph 25 of the SAC alleges that Plaintiff's accountant requested distribution and accounting of Plaintiff's benefits in mid-1996 but Dr. Ryskamp did not provide the distribution election forms to her. Although Defendants characterize Paragraph 26 as evidence that Plaintiff was told by the TPA in 2002 that Plaintiff could not receive a distribution of benefits at that time, Defendants ignore the allegation in Paragraph 26 that Plaintiff was told that "she could not receive a distribution from the Defendant Plans because Ryskamp had not yet filed tax forms for year 2001 and that she would have to wait until his tax forms were filed before she could receive benefits."

The July 5 Order concluded that the averments in Paragraphs

24-26 did not demonstrate as a matter of law a clear and
continuing repudiation of rights under the plans which was made
known to Plaintiff.  Defendants' reliance on the same averments,
as mischaracterized by defendants, does not change this result.
Defendants rely on these same averments, made under penalty of
perjury in Plaintiff's Creditor's Claim, to contend that a
genuine issue of material fact is raised concerning the bar of
the statute of limitations.  However, there is no evidence that
Dr. Ryskamp or the Ryskamp Plan ever unequivocally told Plaintiff
either orally or in writing that she would not receive the
benefits.

There is no evidence that the Plan complied with the
statutory and regulatory requirements set forth in 29 U.S.C. §
1133 and 29 C.F.R. § 2560.503  for denial of benefits and
provided notification of appeal rights.  The evidence establishes
that Plaintiff was given either partial information and/or
excuses or was simply ignored.  In fact, Defendants admit that
the Ryskamp Plan acknowledged that Ms. Hemphill had a right to
vested benefits in November 2004.  This is sufficient to revive
the statute of limitations, if *arguendo*, it had expired.  There
is no dispute by Defendants that ERISA was violated by their
failure to provide the requested documents and information and,
absent the issue of the statute of limitations, that Plaintiff is
entitled to the benefits.

At the hearing, Plaintiff's counsel conceded that discovery
is on-going concerning what happened between the 1996 failure by

37

Dr. Ryskamp to provide distribution election forms and the contact of Dr. Ryskamp on June 21, 2002 by Philip Price, informing Dr. Ryskamp that Plaintiff needed information to take a distribution of her benefits.  Also at the hearing, Defendants asserted that their discovery was not complete and that they would like an opportunity to depose accountants at Price Reinhardt Price.

Rule 56(f), Federal Rules of Civil Procedure, provides in pertinent part:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As explained in *Harris v. Duty Free Shoppers Limited Partnership*, 940 F.2d 1272, 1276 (9th Cir. 1991):

> Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking discovery bears the burden of showing what specific facts it hopes to discover that will raise an issue of material fact.

Here, Defendants have not satisfied these standards in seeking to foreclose summary adjudication because their discovery is not complete.  This case had been pending for over a year before Plaintiff's motion for summary adjudication was heard. Defendants do not refer to any specific facts that they hope to discover that will raise an issue of fact that the Ryskamp Plan

or Dr. Ryskamp communicated a clear and continuing repudiation of Plaintiff's rights to the benefits.  No justification is shown for a Rule 56(f) continuance.

Defendants have not raised a genuine issue of material fact that Plaintiff was not a participant and beneficiary when this action was commenced on October 18, 2005.  Even if Plaintiff is entitled to summary adjudication that she is a participant or beneficiary within the meaning of ERISA, Defendants note that their Answer to the SAC plead the affirmative defenses that California Code of Civil Procedure §§ 337, 337.5 and 683.020 and 29 U.S.C. § 1113 bar all of the claims in the SAC.  Defendants assert: "Plaintiff has offered no facts to contest the statutes of limitation nor has even offered a stated that The [sic] Defendants have no facts to support the bars."

In the July 5 Order Defendants' arguments that the ERISA claims in the SAC are subject to the statutes of limitations set forth in California Code of Civil Procedure §§ 337.5 and 683.020 were rejected, ruling that "Plaintiff's ERISA claims alleged in the SAC are subject to ERISA statutes of limitations." Consequently, the affirmative defenses based on California Code of Civil Procedure §§ 337.5 and 683.020 are not applicable or relevant to resolution of the motion for summary adjudication. Furthermore, as ruled in the July 5 Order, the statute of limitations set forth in 29 U.S.C. § 1113 applies only to the Third Claim for Relief in the SAC.  The motion for summary adjudication is directed only to the First, Second and Fourth

1  Claims for Relief.

2       Plaintiff is entitled to summary adjudication that she was a

3  participant and beneficiary within the meaning of ERISA when this

4  action was commenced and that her claims under the First and

5  Second Claims for relief are not time-barred.[4]   Plaintiff is

6  entitled to summary adjudication of the right to request and

7  receive plan information and benefits required by ERISA §§ 104

8  and 105, 29 U.S.C. § 1024 and 1025 Plaintiff's motion for summary

9  adjudication is GRANTED as to these claims.

10      With regard to the Fourth Claim for Relief, the Ninth

11  Circuit applies California's three-year statute of limitations

12  set forth in CCP § 338(a) to claims for nondisclosure penalties

13  pursuant to 29 U.S.C. § 1132(c).  *Stone v. Travelers Corp.*, 58

14  F.3d 434, 439 (9th Cir.1995).  Plaintiff made requests for an

15  accounting and other information and documents required by ERISA

16  on August 4, 2003, February 5, 2005 and March 29, 2005.  The

17  statutory penalties requested by Plaintiff start on the 31st day

18  following August 4, 2003.  Therefore, because Plaintiff is

19  entitled to summary adjudication that she is a participant or

20  beneficiary within the meaning of ERISA, the Fourth Claim for

21  Relief is not time-barred.

22      D.  <u>Statutory Penalties Against Ryskamp, Inc.</u>[5]

23  _____

24      [4]Because of this conclusion, it is not necessary to address
    Plaintiff's alternative contention that she is entitled to
    equitable tolling of the statute of limitations.

25      [5]"Under 29 U.S.C. § 1132(c), only the plan 'administrator' can

26  be held liable for failing to comply with the reporting and
    disclosure requirements."  *Cline v. Industrial Maintenance Eng. &*

Plaintiff seeks an award of statutory penalties against Ryskamp Inc. in the amount of $110 per day from September 3, 2003 (the 31st day after Plaintiff submitted a written request for an accounting and an account benefit statement statements to Ryskamp on August 4, 2003) to the date of the order granting Plaintiff's motion for summary adjudication.  Plaintiff represents that, as of October 16, 2006, this amount is $125,180.00.

Whether to impose statutory penalties and the amount of those penalties (up to $110 a day) is discretionary.  In *Romero v. SmithKline Beecham*, 309 F.3d 113, 120 (3rd Cir.2002), the Third Circuit held:

> Appropriate factors to be considered ... include 'bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary.' ... Other circuits have studied the role of prejudice or damages to the inquiry and have concluded that although they are often factors, neither is a *sine qua non* to a valid claim under [Section 1132(c)(2)].

*Brown v. Aventis Pharmaceuticals, Inc.*, 341 F.3d 822, 825 (8th Cir.2003), holds:

> Although an 'employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty,' ..., 'neither [a defendant's] good faith nor the absence of actual injury to [the plaintiff] precludes the award of a statutory penalty.' ... [A]lthough Brown did not suffer any loss of health benefits due to the delay, she was forced to invest time, effort, and money in

*Contracting*, 200 F.3d 1223, 1234 (9th Cir.2000), citing *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299 (9th Cir.1989).

1    hiring an attorney to gain access to
     information that she was legally entitled to.
2    Thus it was not an abuse of discretion for
     the district court to award maximum damages.
3
          Plaintiff argues that the statutory maximum penalty as
4
requested should be imposed:
5
               Ryskamp Inc.'s failure to provide here with
6              required documents and information forced Ms.
               Hemphill to (a) make numerous requests over
7              the course of a decade, (b) retain a law firm
               to help her compel Ryskamp Inc. to provide
8              the required information and documents, and
               (c) bring this action for enforcement of her
9              ERISA rights.  Ms. Hemphill's document
               requests remain outstanding today, and she
10             has already incurred significant attorney's
               fees in attempting to obtain documents and
11             information about her benefits and in
               bringing this action against Defendants for
12             their failure to provide her with the
               required information and documents.  Morever,
13             maximum penalties are owed here because Ms.
               Hemphill was prejudiced by Ryskamp Inc.s'
14             failure.  Ryskamp Inc. deprived her of the
               information necessary to obtain a
15             distribution of her benefits, which was the
               stated purpose for each of her requests for
16             information and documents, and deprived her
               of information that would have potentially
17             revealed the mismanagement of her plan
               account over the years since the date of her
18             first request.  Unable to obtain a
               distribution of her benefits because of
19             Ryskamp Inc.'s failure to provide information
               necessary for such distribution, Ms. Hemphill
20             was left with little choice but to commence
               this lawsuit to enforce her rights under
21             ERISA.

22        Defendants argue that no statutory penalties under Section

23   1132(c)(2) should be awarded:

24             Since the principal of James J. Ryskamp, Jr.,
               M.D., Inc., is deceased there is little
25             purpose in penalizing his estate nor [sic]
               his medical corporation.  The specific facts
26             of the lack of participation of Defendant

1       **Judith Ryskamp in the matter of plans**
         **indicates there should be a trial on the**
2       **issue of the appropriateness of penalties.**
         **Plaintiff's only evidence submitted is the**
3       **conduct of the deceased fiduciary.  Plaintiff**
         **offers no evidence that any of the other**
4       **defendants committed misconduct.**

5     **Only the plan administrator is liable for the penalties.  It**

6 **is undisputed that Ryskamp Inc. is the plan administrator.**

7 **Although its principal has died, Ryskamp Inc., as a distinct**

8 **legal entity, is asserted by Plaintiff to continue to exist.  The**

9 **lack of participation of Judith Ryskamp or the other defendants**

10 **is not relevant to a determination of statutory penalties against**

11 **the Plan administrator.  Because the award of such penalties is a**

12 **discretionary decision for the Court, the amount of the**

13 **penalties, fixed by statute, does not present an issue of fact.**

14     **Plaintiff is entitled to an award of statutory penalties**

15 **against the Plan administrator.  Plaintiff has been attempting**

16 **since 1994 to obtain plan documents and information.  Plaintiff**

17 **has had to hire counsel and file a lawsuit to obtain her ERISA**

18 **rights and benefits.  However, some documents were provided.**

19 **Further, Plaintiff's requests for plan documents and information**

20 **were made at widely spaced intervals and not followed up with**

21 **diligence when no response or limited response was made.  The**

22 **death of Dr. Ryskamp on September 25, 2005 is also a factor**

23 **negating an award of statutory penalties in the amount sought by**

24 **Plaintiff because, at his death, compliance with Plaintiff's**

25 **demands and ERISA rights became tied up in the courts.  In the**

26 **exercise of discretion, statutory penalties in the amount of**

$50.00 per day from June 6, 1996 to September 25, 2005 is awarded.  Plaintiff's motion for summary adjudication is GRANTED to this extent.

 **E. Relief Against Judith Dickison Ryskamp.**

 Defendants argue that Judith Dickison Ryskamp should not be liable for any part of an order granting the relief sought by Plaintiff's motion in any capacity.  Defendants rely on their Statement of Disputed Facts as indicating there are specific facts which support trial on the issue of whether there is a trust, contending that no declaratory relief should apply to Judith Dickison Ryskamp if it is determined at trial that there is no revocable living trust of which she is the trustee. Defendants further argue that their Statement of Disputed Facts show "that in her individual capacity it could be determined at trial that she had nothing to do with the plans or the administration of the plans as an individual."  As to Ryskamp's Estate, Defendants contend that the "handling of the Estate is governed and ultimately covered by the Probate Court in terms of the payment of claims."

 Plaintiff responds that, because Judith Ryskamp is the executor of the Ryskamp Estate, she is a proper party to this action and, as such, is responsible for the relief sought by this motion.  Whether or not Judith Ryskamp is properly named as a party as a trustee or an individual, Plaintiff contends, is a red herring.  Plaintiff asserts that her "avenue of legal recourse" for Ryskamp's breaches of fiduciary duty lie against Mrs. Ryskamp

as the executor of his estate.  On September 11, 2006, Judith
Ryskamp, as executor of the estate, rejected Plaintiff's
creditor's claim filed in the Superior Court.  Citing California
Probate Code § 9351, Plaintiff contends that she is entitled to
declaratory relief against Judith Ryskamp as well as the other
defendants.

California Probate Code § 9351 provides:

> An action may not be commenced against a
> decedent's personal representative on a cause
> of action against the decedent unless a claim
> is first filed as provided in this part and
> the claim is rejected in whole or in part.

Plaintiff filed this action on October 18, 2005.  Named as a
defendant in the initial Complaint was the personal
representative of Dr. Ryskamp's estate.  Judith was issued
letters testamentary by the Fresno County Superior Court on March
23, 2006.  The Second Amended Complaint naming Judith as a
defendant was filed on March 29, 2006.  Plaintiff filed her
creditor's claim against the estate in the Fresno County Superior
Court on May 10, 2006 and was denied by Judith thereafter.

Although not raised by Defendants in opposition to the
motion for adjudication, the parties were ordered to file
supplemental briefs discussing the effect, if any, of these facts
on Plaintiff's ability to obtain relief against Judith as the
personal representative of Dr. Ryskamp's estate.

Plaintiff, contending that the only claim in the Second
Amended Complaint against Judith as the Personal Representative
with respect to which Plaintiff moved for summary adjudication is

45

the claim for declaratory relief.  A "claim" for purposes of creditor's claims under the California Probate Code is defined in pertinent part in Section 9000:

> (a) 'Claim' means a demand for payment for any of the following, whether due, not due, or contingent, and whether liquidated or unliquidated:
>
> (1) Liability of the decedent, whether arising in contract, tort, otherwise.

"Only claims enforceable against the decedent during his lifetime by ordinary personal actions for the recovery of money are required to be presented to the estate for satisfaction." *Borba Farms, Inc. v. Acheson,* 197 Cal.App.3d 597, 602 (1988).  Because the claim for declaratory relief the subject of the motion for summary adjudication does not demand monetary relief, Plaintiff argues that it is not a claim subject to Section 9351.

The First Claim for Relief in the Second Amended Complaint is for declaratory relief against all defendants pursuant to 29 U.S.C. § 1132(a)(3).  The Third Claim for Relief is against the Ryskamp Estate as well as Ryskamp, Inc. for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2)-(3) and prays for imposition of a constructive trust "on any ill-gotten profits resulting from the breaches of fiduciary duty committed by Ryskamp and Ryskamp, Inc., and held by any of the Defendants", disgorgement from the Ryskamp Estate, Ryskamp Trust, and Ryskamp Inc. of any ill-gotten profits resulting from their breaches of fiduciary duty, "restoration from the Rykamp Estate, Ryskamp Trust, and Ryskamp Inc. of any losses from the Defendant Plans resulting from their

46

breaches of fiduciary duty" as well as declaratory and injunctive relief.   The Fifth Claim for Relief is for equitable and injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) against Ryskamp, Inc., Ryskamp Estate, Ryskamp Trust, and "Mrs. Ryskamp" and seeks, *inter alia,* imposition of a "constructive trust on the benefits to which Ms. Hemphill is entitled, of which Ms. Hemphill was wrongfully deprived, and which are being held by Ryskamp, Inc., Mrs. Ryskamp, the Ryskamp Estate, and/or the Ryskamp Trust, and any ill-gotten profits on those benefits."

Because the Second Amended Complaint contains claims that appear to be described in Section 9000, the fact that plaintiff's motion for summary adjudication relates only to a claim for declaratory relief does not, of itself, bring this action outside the scope of Section 9000.

Plaintiff further argues that Probate Code § 9351 does not apply to her claims alleged in the Second Amended Complaint because Section 9351 is preempted by ERISA.

In *Teamsters Pension Trust Fund v. H.F. Johnson*, 830 F.3d 1009 (9th Cir.1987), cited by Plaintiff, the Ninth Circuit addressed whether ERISA preempted the provision in the Montana Probate Code that claims arising before death against a decedent "are barred against the estate, the personal representative, and the heirs and devisees of the decedent unless presented ... within 4 months" after publication of notice to creditors. *Id.* at 1016.   The Ninth Circuit agreed with the Pension Trust Fund that ERISA preempts the Montana statute:

47

With limited exceptions not relevant to this discussion, ERISA 'supersede[s] any and all State laws insofar as they ... relate to any employee benefit plan ...' 29 U.S.C. § 1144(a).  A law 'relates to' an ERISA plan if it 'has a connection with or reference to such a plan.'  *Shaw v. Delta Air Lines*, 463 U.S. 85, 98 ... (1983).  ERISA preemption is to be construed broadly, and is not limited to state laws designed specifically to affect employee benefit plans.  *Pilot Life Insurance Co. v. Dedeaux*, ___ U.S. ___, 107 S.Ct. 1549, 15552-53 ... (1987); *Shaw*, 463 U.S. 85 ... As the Court stated in *Pilot Life*, 'The question whether a certain state action is preempted by federal law is one of Congressional intent.  The purpose of Congress is the ultimate touchstone.'  107 S.Ct. at 1522 ....

That Congress expressly provided a period of limitations governing actions to collect withdrawal liability (29 U.S.C. § 1451(f)) indicates that Congress considered the period of limitations applicable to such actions essential to enforcement of employer obligations under [the Multiemployer Pension Plan Amendments Act (MPPAAA)].  Montana Probate Code § 72-3-803, as it applies to this case, adds a condition not contemplated by Congress to collection of withdrawal liability.  Montana's non-claim statute plainly 'relates to' the Fund, and is preempted under ERISA, 29 U.S.C. § 1144(a).  The Fund's suit against Robert Mithcell's Estate was timely.

Our conclusion is consistent with the general law concerning federal preemption of state statutes of limitation: '[I]t is well established that federal claims are subject to state statutes of limitations unless there is a federal statute of limitations or a conflict with federal policy.'  *South Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498 ... (1986) ... 'If Congress explicitly puts a limit upon the time for enforcing a right which it created, that is the end of the matter.  The Congressional statute of limitation is definitive.'  *Holmberg v. Armbrecht*, 327 U.S. 392m 395 ... (1946).

48

*Id.* at 1016-1017.  *See also Evanson v. Price*, 2006 WL 2829780 (E.D.Cal.2006), discussing California's decedent statute of limitations in California Civil Code § 366.2 requiring any claim against a decedent's estate to be brought within one year after the date of death:

> The Supreme Court held in *Boggs* that when a 'direct clash [exists] between state law and the provisions and objectives of ERISA, the state law cannot stand.'  *Boggs v. Boggs*, 520 U.S. 833, 844 (1997).  'We can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects.'  *Id.* at 841.  Where this conflict exists, analysis ends, and inquiry is unnecessary as to 'whether the [ERISA] statutory phrase "relate to" provides further and additional support for the pre-emption claim.  Nor need we consider the applicability of field preemption.'  *Id.*  'In enacting ERISA, Congress set out to protect the participants in employee benefit plans by establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and by providing for appropriate remedies.'  *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 S.Ct. 715, 719 (9th Cir.1997).  The California decedent statute of limitations, by shortening the time period within which a cause of action can be brought against an ERISA fiduciary, conflicts with the ERISA statute of limitations at issue and would operate to limit available remedies under ERISA and thereby frustrate its purpose.  To the extent that California's decedent statute of limitations conflicts with ERISA's statute of limitations, it is pre-empted.

Plaintiff argues that application of the claim presentation/rejection requirement of Section 9351 to this action clashes directly with ERISA by not only limiting the time period for Plaintiff to bring her action against the Personal

49

1 Representative but also by precluding Plaintiff from bringing any

2 ERISA action against the Personal Representative without first

3 following claim procedures in the state probate court.   Plaintiff

4 contends that Section 9351 imposes a condition precedent to the

5 commencement of an action, not merely a statute of limitation.

6 Thus, Plaintiff argues, Section 9351 "adds a condition not

7 contemplated by Congress" because it requires exhaustion of an

8 administrative process established under state law in order to

9 vindicate rights that are governed by ERISA.

10      Defendants respond that Section 9351 is not preempted by

11 ERISA.   Defendants refer to California Probate Code § 9353:

12          (a) Regardless of whether the statute of
           limitations otherwise applicable to a claim
13          will expire before or after the following
           times, a claim rejected in whole or in part
14          is barred as to the part rejected unless,
           within the following times, the creditor
15          commences an action on the claim or the
           matter is referred to a referee or to
16          arbitration:

17          (1) If the claim is due at the time the
           notice of rejection is given, three months
18          after the notice is given.

19          (2) If the claim is not due at the time the
           notice of rejection is given, three months
20          after the claim becomes due.

21          (b) The time during which there is a vacancy
           in the office of the personal representative
22          shall be excluded from the period determined
           under subdivision (a).

23 Citing *Boggs v. Boggs,* 520 U.S. 833, 841 (1997), that ERISA

24 preemption analysis "can begin ... by simply asking if state law

25 conflicts with the provisions of ERISA or operates to frustrate

26

its objects", Defendants refer to the holding in *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643 (9th Cir.2000).

In *Wetzel*, the Ninth Circuit held that, because there is no specific federal statute of limitations governing claims for benefits under an ERISA plan, the most analogous California statute of limitations for suits on written contracts set forth in California Code of Civil Procedure § 337 applied. *Id.* at 646-648. Defendants, noting that California Probate Code § 9000 defines a claim for purpose of the Probate Code to include liability of the decedent arising in contract, argues:

> The rule from *Wetzel* would apply [to] Probate Code § 9153 in the event of a death where a contract issue was pending, since ERISA is silent on the issue of the death of persons involved in the claims for benefits and no facts submitted on this motion conflict with ERISA provisions.

Defendant's position is without merit, given the Ninth Circuit's holding in *Teamsters Pension Trust Fund, supra*. Section 9351 is essentially the same as the Montana statute there in dispute.

Plaintiff further argues that the delay in opening the probate of the Ryskamp Estate has seriously interfered with Plaintiff's ability to vindicate her ERISA rights. Plaintiff notes that she was required to apply for an extension of time for service of process because of the delay in appointing the Personal Representative of the Ryskamp Estate. (Docs. 16-19). Plaintiff argues that she had to commence this action in order to

51

meet any applicable statutes of limitation, but, at that time, a creditor's claim could not have been filed in the Ryskamp Estate probate because of the absence of a personal representative. Plaintiff refers to the comment in *Radar v. Rogers*, 49 Cal.2d 243, 248 (1957):

> At the time the complaint in the case at bar was filed, ... the claim here had not, and could not have been, presented to the personal representative of decedent's estate because no personal representative had been appointed, and no claim had or could then have been filed 'in the office of the clerk of the court from which letters issued' (Prob. Code, § 700), for no letters had issued.  Nevertheless, the cause of action was extant.  'A thing in action arising out of a wrong which results in physical injury to the person ... shall not abate by reason of the death of the wrongdoer.'  (Civ. Code, § 956.)  The cause of action against the decedent is the cause of action which survives against the personal representative ... Realism requires us to recognize the practical problem which plaintiffs faced. They believed they had a cause of action and in the exercise of diligence they wished to have their complaint on file before any question as to the running of an applicable statute of limitations could arise. Accordingly, they filed this complaint ... The desireability of the procedure followed by plaintiffs is not a matter which requires consideration or comment; we pass only on the ultimate questions of law essential to disposition of this appeal.

Plaintiff contends that, had she waited until the Personal Representative had been appointed, a creditor's claim filed and rejected, before commencing this action, she would have assumed the risk of not satisfying the ERISA statutes of limitations and would possibly have had to rely on the tolling of these statutes

of limitation.

If California Probate Code § 9351 were found to apply to Plaintiff's claims alleged in the Second Cause of Action, Plaintiff argues that bringing this action against Judith as the Personal Representative of the Estate before presentation and rejection of a creditor's claim, was cured when Plaintiff timely filed a creditor's claim in the Superior Court and that claim was rejected.  In so arguing, Plaintiff cites *Radar v. Roger*, *supra,* 49 Cal.2d 243.

*Radar* presented the issue whether an action was barred by California Probate Code § 714:

> When a claim is rejected either by the executor or administrator ... written notice of such rejection shall be given ... to the holder of the claim or to the person filing or presenting it, and the holder must bring suit in the proper court against the executor or administrator, within three months after the date of service of such notice if the claim is then due ... [or] the claim shall be forever barred.

49 Cal.2d at 245.  The plaintiffs filed a complaint for damages for negligence of the decedent in the Superior Court.  At that time, no personal representative of the estate had been appointed.  The complaint for damages named Doe defendants as the executor or administrator of the decedent's estate.  After the personal representative was appointed, the plaintiffs filed claims in the probate proceedings and those claims were rejected. More than three months after the claims were presented to the personal representative and rejected, plaintiffs amended the

1    complaint to add the true name of the personal representative.

2    The California Supreme Court ruled:

3            [I]t would be highly technical to apply
             section 714 to bar this complaint, which was
4            filed not too late but, at worst,
             prematurely.  The substantial rights of the
5            estate are not affected by the procedure
             followed by the plaintiffs.  The
6            administratrix had ample opportunity, before
             the filing of the amended complaints, to
7            approve plaintiffs' claims.  The substance of
             the defect that the action had been brought
8            before presentation and rejection of claim no
             longer existed when defendant by general
9            demurrer to the amended and supplemental
             complaint sought to raise the issue.  We do
10           not believe that section 714 was ever
             intended to bar the action in this situation.
11           We again quote the language of *Preston v.
             Knapp* (1890), *supra*, 'The object of the
12           statutory requirement of presentation and
             rejection of claims against estates, as a
13           condition precedent to the commencement of
             suits upon them, is to save to estates of
14           deceased persons the costs and expenses of
             useless suits - suits to recover what would
15           have been allowed and paid by the executor
             ... without suit.'  We add, 'When the reason
16           of a rule ceases, so would the rule itself.'
             (Civ. Code, § 3510.)  Here, the reason of the
17           rule ceases because it appears from the very
             pleading which defendant relies on to show
18           the facts which she invokes, that before she
             raised the plea she had had, and had
19           rejected, every benefit the statute gave her.

20   *Id.* at 249.

21        Defendants respond that *Radar* is not controlling, citing

22   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992):

23           Over the years our cases have established
             that the irreducible constitutional minimum
24           of standing contains three elements.  First,
             the plaintiff must have suffered an 'injury
25           in fact' - an invasion of a legally protected
             interest which (a) concrete and
26           particularized ... and (b) 'actual or

                                54

imminent, not "conjectural" or "hypothetical,"' ... Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' ... Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' ....

Defendants contend:

Probate Code § 9351 expressly provides that an action on a rejected claim must be brought within three months following the rejection of the claim.  The simple and express language of Probate Code §§ 9351 and 9353 together with the supremacy of Article III of the United States Constitution trump the California doctrine of abatement.  The Probate Code expressly provides that no suit can be filed until a claim is rejected and that once it is rejected the suit is barred unless filed within three months of the rejection.  Plaintiff Hemphill filed the Second Amended Complaint before a claim was presented, before it was rejected and has never filed a complaint against the personal representative of the Ryskamp Estate within the three months following the rejection.

The purpose of Section 9351, as articulated by the California Supreme Court, is not served by Defendants' contention, i.e., the prosecution of useless lawsuits when presentation of a claim would have negated the need.  Here, there is no question that the personal representative of the Estate had knowledge of this lawsuit before Plaintiff filed her Probate claim, because all papers filed in this action by Defendants' attorney include the personal representative of the estate as a client.  There was and is an actual case or controversy under the

55

requirements of Article III.  *Lujan v. Defenders of Wildlife*

does not undermine this conclusion.

Finally, Plaintiff argues that Judith has waived or is

estopped from arguing that Section 9351 bars Plaintiff's claims.

As support for this position, Plaintiff's attorney, Clarissa

King, avers in pertinent part:

> 3.  On April 17, 2006, I spoke with Donald
> Lescoulie, counsel for Defendants, after the
> Second Amended Complaint had been filed and
> process served on Judith Dickison Ryskamp in
> her capacity as Personal Representative of
> the Estate of James J. Ryskamp, Jr. ... At
> the time, the Defendants had not yet
> responded to the Second Amended Complaint.
>
> 4.  During that April 17, 2006 telephone
> call, Mr. Lescoulie stated that he understood
> that Ms. Hemphill had not yet filed a
> creditor's claim in the state court probate
> proceeding for the Ryskamp Estate, and that
> the Personal Representative could move to
> dismiss Ms. Hemphill's action on that ground.
> He further stated that if Ms. Hemphill were
> to file a creditor's claim, Ms. Hemphill
> would thereby avoid having to defend against
> a motion to dismiss brought by the Personal
> Representative for any failure to file a
> creditor's claim.
>
> 5.  Ms. Hemphill subsequently filed a
> creditor's claim on May 5, 2006, which was
> rejected by the Personal Representative on
> September 12, 2006.

Plaintiff notes that Defendants filed a motion to dismiss the

Second Amended Complaint on April 20, 2006, which motion did not

include as grounds for dismissal the failure to file a claim

under Section 9351 prior to commencing the action against the

Personal Representative.  (Docs. 43-44).  After the motion to

dismiss was denied, Defendants filed an Answer to the Second

Amended Complaint on July 19 2006, which does not allege an affirmative defense based on the failure to comply with Section 9351.  (Doc. 60).  In addition, Plaintiff notes that Defendants did not oppose the pending motion for summary adjudication on the ground that Plaintiff failed to comply with Section 9351, as the issue was raised *sua sponte* by the court.  Plaintiff argues that Judith consented to the jurisdiction of this court over this action and is therefore estopped from arguing that the action should not proceed because this action was filed before compliance with Section 9351.  Plaintiff relies on *Heywood v. Municipal Court*, 198 Cal.App.3d 1438 (1988).

*Heywood* involved an action that was pending at the time of the decedent's death.  Then Probate Code § 709 provided in pertinent part:

> If an action is pending against the decedent at the time of his or her death, the plaintiff shall in like manner file his or her claim with the clerk or present it to the executor ro administrator for allowance or rejection, authenticated as required in other cases.  No recovery shall be allowed against decedent's estate in the action unless proof is made of the filing or presentation ...."

Heywood did not file a claim and eventually judgment for Heywood was entered.  The issue before the Court of Appeal was whether that judgment was void because a valid creditor's claim  was not filed or presented as required by the Probate Code.  198 Cal.App.3d at 1444.  The Court of Appeal held:

> The two courts clearly had jurisdiction of the parties.  It is also clear that the courts had subject matter jurisdiction, and

57

were empowered to hear and determine the
cause.  'Any jurisdictional concept that may
be involved in the cases holding the [courts
are] without power to grant a judgment
against an estate when a creditor's claim has
not been filed is not lack of jurisdiction of
the cause but excess of jurisdiction. ...

'When, as here, the [courts have]
jurisdiction of the subject, a party who by
his conduct consents to or permits action
which may be in excess of the [court's] power
may be estopped to complain of the ensuing
action in excess of jurisdiction. ...

'Whether a party shall be estopped from
claiming an excess of jurisdiction depends on
the importance of the irregularity not only
to the parties but to the functioning of the
courts and in some instances on other
considerations of public policy ....' ....

The doctrine of finality of judgments is
premised upon the important public policy
that there must be an end to litigation ....

We conclude the courts did not lack
jurisdiction but at most acted in excess of
jurisdiction in awarding judgment against the
Executrix.  For the reasons stated, the
Executrix is estopped to assert any such
excess of jurisdiction.

*Id.* at 1445.

Plaintiff argues that because Judith did not assert that

Section 9351 bars Plaintiff's claims, Judith has waived the

defense.  Plaintiff asserts that, at this juncture in this

litigation, where discovery has commenced and a motion for

summary adjudication briefed and submitted, requiring dismissal

of this action and its re-filing would force Plaintiff to go

through a needless exercise and elevate form over substance.  In

this regard, if Plaintiff is required to dismiss this action and

refile it to comply with Section 9351, she acknowledges that the action might be barred by the limitation period set forth in Section 9353.   Judith gave notice to Plaintiff of the rejection of her claim on September 12, 2006.   The three month period required by Section 9353 expired on December 12, 2006, two days before this supplemental briefing was ordered.   Plaintiff argues that if she must dismiss this action and refile it, equitable tolling should apply.

Defendants argue that the defense of failure to comply with Section 9351 has not been waived because the limitation period of Section 9353 did not expire until December 13, 2006.   Defendants contend that Judith properly could do nothing until the affirmative defense ripened on December 14, 2006 and asserts that Judith will move the court for permission to amend the Answer to include the affirmative defense.

The rulings set forth above negate the parties' respective arguments concerning waiver or estoppel.

<u>CONCLUSION</u>

For the reasons stated above:

1.   Plaintiff's motion for summary adjudication is GRANTED;

2.   Counsel for Plaintiff shall prepare and lodge a form of order setting forth the rulings in this Memorandum Decision within five (5) days following the date of service of this decision.

///

///

1  IT IS SO ORDERED.

2  **Dated:    March 21, 2008**                        /s/ Oliver W. Wanger
                                             UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26